The Constitution places the burden of proof and production of evidence squarely upon the shoulders of the government. *See United States v. Jennings*, 83 F.2d 145, 149 (6th Cir. 1996). Accordingly, the error was plain.

However, a defendant must next show that the error substantially affected his rights. Although initially strapping Leachman with the burden of going forward, the judge ultimately reviewed the evidence in light of the Government's burden of proof, stating: "So my conclusion is that *they have established* over a thousand, and therefore the mandatory minimum would apply." Sentencing Hearing, Aug. 31, 2000, Tr. at 108 (emphasis added). Accordingly, we find the error did not affect Leachman's substantial rights, and we need not address the fourth factor.

In sum, we reject Leachman's claim that the judge committed plain error when he initially shifted the burden of proof at sentencing.

### VII. Conclusion

For the foregoing reasons, we affirm the judgment of sentence imposed by the United States District Court for the Western District of Kentucky.

**AFFIRMED.**

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0353P (6th Cir.)
File Name: 02a0353p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

      *v.*                                   No. 01-5494

MARC MILTON LEACHMAN,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00016—John G. Heyburn II, Chief District Judge.

Argued: July 16, 2002

Decided and Filed: October 9, 2002

Before: SUHRHEINRICH, SILER, and GILMAN, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, for Appellant. Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & COOK, Indian Springs, Ohio, for Appellant. Terry M. Cushing, Alexander T. Taft, Jr., ASSISTANT

UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

SUHRHEINRICH, Circuit Judge. Defendant-Appellant Marc Milton Leachman appeals from the judgment entered on September 7, 2000, in the United States District Court for the Western District of Kentucky, sentencing him to 120 months following a guilty plea to four counts arising out of a home marijuana-growing operation, in violation of 21 U.S.C. §§ 841 and 846.

### I. Introduction

On appeal, Leachman claims his sentence is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because his mandatory minimum sentencing range was determined by an amount of drugs not proved to a jury beyond a reasonable doubt. Leachman's argument fails for two reasons.

First, in June of this year, the United States Supreme Court held, contrary to the precedent of this Court, that the constitutional rights prescribed in *Apprendi* apply only to factors that extend a defendant's sentence beyond the statutory maximum, and not to those that increase the statutory mandatory minimum. *Harris v. U.S.*, — U.S. —, 122 S. Ct. 2406 (2002).

Second, even had the Supreme Court not decided *Harris*, Leachman had knowingly and voluntarily waived his rights to a jury and to proof beyond a reasonable doubt, in regard to the amount of drugs. He affected a waiver, first, by pleading guilty to an indictment properly charging the amount of drugs as an element of his offense; and second, by expressly agreeing to be bound by the judge's determination of the amount.

does nothing to reinstate his right to proof beyond a reasonable doubt.

In sum, even if *Flowal* and its progeny were still good law, Leachman's argument fails because he knowingly and voluntarily waived his constitutional rights to a jury and to proof beyond a reasonable doubt of the amount of drugs specified against him.

### VI. The Burden of Proof

Leachman claims the burden of proof was unconstitutionally shifted to him during the sentencing hearing. Leachman failed to object on this point at the trial level. Hence, as with all objections not raised at trial, we review for plain error only. Fed. R. Crim. P. 52(b); *U.S. v. Olano*, 507 U.S. 725 (1993). As mentioned above, to show plain error, a claimant must show (1) that there is error (2) that is plain (3) that substantially affects the rights of the defendant and (4) substantially affects the fairness and integrity of the judicial proceedings. *Olano,* 507 U.S. at 734.

At sentencing, the judge initially placed the burden of proof on Leachman:

> The Court: Okay. I guess it's your burden to convince me as to what the —
> Leachman's counsel: It's my burden to go forward?
> The Court: Yes.
> Leachman's counsel: Well, judge, let me ask you procedurally how you would like me to do that. I have a transcript —
> The Court: It's your burden. The standard is by a preponderance of the evidence to determine how much marijuana was involved.

Sentencing Hearing, Aug. 31, 2000, Tr. at 23-24. Accordingly, the presentation of witnesses was reversed. Hence, there was error, but we will only recognize it if it is plain error. An error is plain if it is clearly contrary to established rules of law.

Leachman now intimates, in spite of the indictment and his subsequent colloquy with the judge, that the amount of drugs was later stricken from the plea agreement. Presumably, Leachman grounds his contention in the following colloquy:

> The Court: Okay. Does the defendant agree with all the things the prosecutor has said?
> Mr. Miller:   Your honor, we certainly accept responsibility for some of the things that were said. There are a few issues that we certainly disagree with. One of them is the plant count. I believe — I might be wrong, I think it's *Edge v. United States* is one of the cases, and we would certainly expect at sentencing that that might be an issue that would be discussed.
> The Court: Okay.
> Mr. Miller:   And argued by counsel, both one or the other, evidentiarily or by argument.
> The Court: Okay.

Change of Plea Hearing, April 20, 2000, Tr. at 18-19. However, this language does not serve to nullify the portion of Leachman's plea pertaining to the amount, but simply verbalizes what had earlier been intimated — that Leachman had agreed to be bound by the judge's determination at sentencing by a preponderance of the evidence. This colloquy

---

distribution, at sentencing. We held, notwithstanding the defendant's plea, that the "enhancement elements had to be proved by the court beyond a reasonable doubt. *Rebmann*, however, is distinguishable from this case. First, although not addressed by us, the indictment in *Rebmann* was technically deficient to invoke the enhancement provisions, thereby violating Rebmann's right to a proper indictment. *Id.* at 522 n. 1. Second, Rebmann's plea expressly reserved the issue of whether death resulted to sentencing, *without waiving her right to proof beyond a reasonable doubt.* Third, and most strikingly, Rebmann did not acquiesce to the enhanced range in open court the way Leachman did. In any event, *Rebmann* dealt with the enhancement of a mandatory minimum under § 841, and, like its friends *Flowal, Ramirez, Strayhorn, Harper, Lucas,* and *Garcia,* is overruled to the extent it conflicts with *Harris* and this opinion.

---

Moreover, the judge did not commit plain error when, at Leachman's sentencing hearing, he shifted the burden of proof to Leachman, because the error did not substantially affect Leachman's rights.

Accordingly, we reject Leachman's contentions and affirm the sentence imposed by the district court.

## II. Facts

On October 26, 1998, Hardin County, Kentucky police officers executed a search warrant for Leachman's residence, 625 Woodlawn Drive, in Bloomfield, Kentucky. The warrant was based primarily on information from an informant that there was a substantial marijuana growing operation taking place in the home.[1] The officers noted further that there was an extraordinary amount of electricity being consumed at the residence, indicating the potential for such an operation.[2] The officers executed the warrant and seized over 1300 plants, over one kilogram of processed marijuana, two garbage bags containing a combined 1350 stalks, a number of marijuana stalks drying on a clothesline, and a significant amount of paraphernalia, such as scales, used in the growing of marijuana. Jacquelyn Mills, Leachman's co-defendant, was

---

[1] Apparently, the informant was an acquaintance of Leachman. He had been in the house six months earlier and had observed equipment and materials consistent with an indoor grow, such as intensely bright lights and shiny paper on the walls (which would conceivably be used to re-direct the light). The informant was again in the home three days before the execution of the search warrant, at which time he smelled the strong odor of marijuana, and saw new construction evidencing more growing equipment, such as additional lights.

[2] Specifically, in 1996, the house consumed an average of 3324 kilowatts per month; in 1997, it consumed an average of 4939 kilowatts per month; and in 1998, it consumed 6705 per month. Police officers determined that this usage was consistent with an indoor grow and sufficient to swear out a search warrant.

present, though Leachman was not.[3]    Nonetheless, Leachman's fingerprints were found around the house, including on much of the growing equipment.

A federal grand jury returned a three count indictment against both Defendants on February 1, 1999. The indictment charged each with one count of conspiracy to manufacture marijuana, one count of manufacturing 1366 marijuana plants ("Second Count"), and one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841 and 846; as well as aiding and abetting each other in the manufacture and possession, under 18 U.S.C. § 2.

The officers returned on February 11, 1999 with an arrest warrant for Defendants. At this time, the officers found new marijuana plants and growing equipment on the upstairs balcony. The police discovered receipts evidencing the purchase of growing equipment from a store called New Earth, reputed to be in the business of selling drug manufacturing equipment. All such receipts were dated subsequent to the original search. The officers waited for and arrested Leachman and Mills.

A fourth charge of manufacturing marijuana, in violation of 21 U.S.C. § 841(a), based on this second operation, was added against Leachman only in a superseding indictment on January 19, 2000. Leachman initially pled not guilty, but subsequently changed his plea to guilty on all four counts, including the Second Count, which specified the amount of drugs.

A sentencing hearing was held on August 31, 2000, at which time the district court judge sentenced Leachman concurrently on all counts, based on the 1366 marijuana plants charged in the indictment. The judge imposed a prison sentence of 120 months followed by five years of supervised

---

[3]Although Leachman was not present, there was ample evidence to suggest he lived there, such as his wallet containing personal papers and his driver's license.

possessed 1366 marijuana plants. Accordingly, the amount of drugs was contained in Leachman's plea.

Moreover, the voluntariness of Leachman's plea was explored by the judge at the Change of Plea Hearing:

The Court:  You are aware of the potential maximum penalties under this – under these charges?
The Defendant:  Yes, Sir.
The Court:  And the minimum penalties of 10 years on these charges?
The Defendant:  Yes, Your Honor.
The Court: Okay. Has anyone forced you or threatened you to enter into a plea here?
The Defendant:  No, Sir.
The Court:    Have you fully discussed all the ramifications of it with your attorney?
The Defendant:  Yes, I have.

Change of Plea Hearing, April 20, 2000, Tr. at 9-10. Although the judge did not specify the amount of drugs during this colloquy, he specified the sentencing range applicable to the charges in the indictment. Leachman agreed to the range, thereby implicitly agreeing to the amount.

Even less persuasive than *Strayhorn* are *Flowal* and *Ramirez*, both relied on by Leachman. Notwithstanding that these cases have also been overruled by *Harris*, Leachman's reliance on them was nonetheless misplaced. Both involved violations of § 841, and each defendant, like Leachman, was charged in an indictment properly alleging the amount of drugs. The amount of drugs was never proved to the jury and we remanded each cause for re-sentencing. Unlike *Flowal* and *Ramirez*, Leachman pled guilty and waived his rights.[9]

---

[9]Because today's holding may seem a bit at odds with *U.S. v. Rebmann*, 226 F.3d 521 (6th Cir. 2000), we find it necessary to address the holding in that case. In *Rebmann*, the defendant pled guilty under § 841 to distribution of heroin and submitted to the judge's discretion to find the enhancement factor of whether "death resulted" from her heroin

more than a mirror image of the treatment of the other elements.[7]  Accordingly, Leachman had effectively waived his rights to have the amount of drugs proved to a jury beyond a reasonable doubt when he pled guilty.

In *Strayhorn*, which likewise involved a guilty plea, we held that the defendant did not forfeit his right to have the amount of drugs proved to a jury beyond a reasonable doubt. Even if *Strayhorn* were still the law in this Circuit, it is nonetheless inapplicable to these facts.  What is significant in *Strayhorn*, and distinguishable here, is that Strayhorn's indictment did not specifically allege the amount of drugs. Thus, the defendant was not on notice and was therefore incapable of executing a knowing and voluntary waiver of his rights in regard to the amount.[8]   Here, the superseding indictment alleged not that Leachman had possessed some unspecified amount of drugs, but that he specifically

---

[7]Incidentally, we have previously found that a defendant waives the constitutional rights proffered in *Apprendi* when he pleads guilty.  If a defendant "stipulate[s] to the amount of drugs for which he was held responsible, and the district court did not rely on any fact outside of the plea agreement to determine drug quantity at sentencing," there is no *Apprendi* violation.  *U.S. v. Harper*, 246 F.3d 520, 530 (6th Cir. 2001). *Harper* is slightly distinguishable, however, because here the judge did rely on testimony at sentencing as well as Leachman's plea, although it seems superfluous.  Nonetheless, *Harper*, dealing with the enhancement of a mandatory minimum, is overruled to the extent it conflicts with *Harris* and this opinion.

[8]*Strayhorn* is further distinguished by the cases of *U.S. v. Lucas*, 282 F.3d 414 (6th Cir. 2002), and *U.S. v. Garcia*, 268 F.3d 407 (6th Cir. 2001).  In each of these cases, we held a defendant waived his rights via a guilty plea, even though the indictments were not properly charged.  In neither case did the judge sentence the defendant to only the mandatory minimum.  We held that sentencing a defendant in the middle of the range evidenced that the judge had not considered the mandatory minimum as a limit to his discretion.  Accordingly, the fact that the amount was not contained in the indictment was irrelevant to the sentence ultimately imposed.  Of course, *Lucas* and *Garcia*, dealing with mandatory minimum sentences, are likewise overruled to the extent they conflict with *Harris* and this opinion.

---

release.  Leachman filed a notice of appeal on November 2, 2000, and it was denied as untimely.  Leachman subsequently filed a habeas petition under 28 U.S.C. § 2255,[4] citing ineffective assistance of counsel under the Sixth Amendment for failure to timely file his notice of appeal, and requesting relief in the form of a delayed direct appeal.  The judge granted the petition and a second notice of appeal was filed on April 18, 2001.  This matter is now properly before this Court.

### III.  Standard of Review and Statutory Background

The first task in evaluating Leachman's *Apprendi* claim is to specify the proper standard of review.  Leachman claims the judge erred as a matter of law in imposing his sentence. However, Leachman never raised his objection with the district court.  Accordingly, we review this issue for plain error only.  Fed. R. Crim. P. 52(b); *see also U.S. v. Cotton*, — U.S. —, 122 S. Ct. 1781 (2002); *Johnson v. U.S.*, 520 U.S. 461, 166-67 (1997); *U.S. v. Graham*, 275 F.3d 490, 521 (6th Cir. 2001).  There is plain error only if there is an error that is

---

[4]Leachman originally noted his desire to appeal at sentencing.  His notice was not immediately filed, and eventually Leachman sent a letter to the clerk of courts for the Western District of Kentucky inquiring about his appeal.  In the interim, Leachman's trial attorney had withdrawn from the case and failed to pursue the appeal.  The clerk's office informed Leachman that no notice of appeal had been filed and filed one on his behalf on November 2, 2000, some fifty-six days after the September 7 judgment.  Since under Fed. R. App. P. 4(b)(1)(A), the defendant only has ten days to file his notice, it was dismissed as untimely by a panel of this Court on January 25, 2001.  Leachman filed a § 2255 motion for habeas relief in the district court, seeking to file a delayed direct appeal.  The judge granted the request without explanation, presumably because a defendant is entitled to habeas relief when he requests that a notice of appeal be filed, and his counsel ignores his request.  Such failure by counsel constitutes per se ineffective assistance under the Sixth Amendment and entitles the defendant to habeas relief under § 2255.  In such a case, the relief available to the defendant is a delayed direct appeal. *See, e.g., Ludwig v. U.S.*, 162 F.3d 456, 458-59 (6th Cir. 1998); *Rosinski v. U.S.*, 459 F.2d 59, 59-60 (6th Cir. 1972) (per curiam).  Hence, this matter is timely before this Court as a direct appeal.

plain, and it also affects the substantial rights of the defendant. Even so, we will act on the error only if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *See Cotton*, 122 S. Ct. at 1786.

Leachman was charged under 21 U.S.C. §§ 841 and 846, and sentenced under those statutes' penalty provision, 21 U.S.C. § 841(b)(1)(A), which provides:

> In the case of a violation of subsection (a) of this section involving 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, *or 1000 or more marijuana plants* regardless of weight . . . such person shall be sentenced to a term of imprisonment which may not be less than ten years or more than life . . . .

21 U.S.C. § 841(b)(1)(A)(vii) (emphasis added).[5]

Under the plain language of the statute, the 1366 plants with which Leachman was charged places him in the ten-year mandatory minimum range. At sentencing, in accordance with Leachman's plea, the judge found the amount of drugs by a preponderance of the evidence. Section 841(b)(1)(A) provides the *maximum* penalty for infractions involving 1000 or more marijuana plants is life imprisonment. Therefore, having found the threshold amount, the judge had a range of ten years to life within which he could sentence Leachman. The judge exercised his discretion and sentenced Leachman only to the minimum ten years.

Leachman alleges that the judge erred, under *Apprendi*, in calculating his mandatory minimum sentence because the judge impermissibly considered an amount of drugs never proved to a jury beyond a reasonable doubt. Leachman relies on the precedent of this Court and reads *Apprendi* and its

---

[5]This section refers to violations of § 841(a), which prohibits the manufacture, distribution, dispensing, or possession of a controlled substance. 21 U.S.C. § 841(a)(1).

Although *Harris* involved a defendant sentenced under 18 U.S.C. § 924, there is no logical reason why its rule does not likewise govern convictions under 21 U.S.C. § 841. Accordingly, *Flowal, Ramirez, Strayhorn* and all other cases before this Circuit in which we have held that *Apprendi* applies to mandatory minimum sentences, are overruled to the extent they conflict with *Harris* and this opinion. *See, e.g., U.S. v. Humphrey*, 287 F.3d 422 (6th Cir. 2002); *Gibson v. U.S.*, 271 F.3d 247 (6th Cir. 2001); *U.S. v. Garcia*, 268 F.3d 407 (6th Cir. 2001).

### V.  Waiver

Even if the Supreme Court had not decided *Harris*, Leachman's argument would have nonetheless failed because Leachman effected a knowing and voluntary waiver of his constitutional rights to a jury and to proof beyond a reasonable doubt. *Apprendi* did nothing more than reinforce the Due Process and Sixth Amendment rights already possessed by the defendant, and extended these rights to factors that enhance a defendant's sentence beyond the statutory maximum. As constitutional rights, these rights are subject to ordinary rules of waiver and a defendant can forfeit them, as long as he does so knowingly and voluntarily. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

By pleading guilty, it is well established a defendant forfeits a host of constitutional rights, including his right to a jury, *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and his right to have every element of his offense proven beyond a reasonable doubt. *Neely v. Pennsylvania*, 411 U.S. 954, 957 (1973). Since he pled guilty to an indictment that specified the amount of drugs, the basis for Leachman's position must be that there is some special significance attached to enhancement elements, such that they are unlike other elements and immune from the ordinary rules of waiver. However, there is no basis in *Apprendi,* nor in the historical jurisprudence on which *Apprendi* is founded, for treating the enhancement elements differently than the more traditional elements of the offense, such that their treatment is anything

which "anyone convicted of certain enumerated felonies is subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge finds, by a preponderance of the evidence, that the person 'visibly possessed a firearm' during the commission of the offense." *McMillan*, 477 U.S. at 81. The majority in *Apprendi* expressly declined to overrule *McMillan*, but instead limited *McMillan's* holding to "cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict— a limitation identified in the *McMillan* opinion itself." *Apprendi*, 530 U.S. at 487 n. 13. In the plurality portion of the opinion, *Harris* reinforced *McMillan*'s reasoning that factors increasing the mandatory minimum sentence are not elements, but mere sentencing factors not entitled to the same constitutional protections:

> That reasoning still controls. If the facts judges consider when exercising their discretion within the statutory range are not elements, they do not become as much merely because legislatures require the judge to impose a minimum sentence when those facts are found— a sentence the judge could have imposed absent the finding. It does not matter, for the purposes of the constitutional analysis, that in statutes like the Pennsylvania Act the "State provides" that a fact "shall give rise both to a special stigma and to a special punishment." *McMillan*, *supra*, at 103 (Stevens, J., dissenting). . . . These facts, though stigmatizing and punitive, have been the traditional domain of judges; they have not been alleged in the indictment or proved beyond a reasonable doubt. There is no reason to believe that those who framed the Fifth and Sixth Amendments would have thought of them as the elements of the crime.

*Harris*, 122 S. Ct. at 2415-16 (plurality). Hence, *McMillan* and *Apprendi* have been reconciled and there is no longer question that *McMillan* is still good law.

progeny as declaring an absolute ban on enhancing a defendant's mandatory minimum sentence based on facts proved only by a preponderance of the evidence. Accordingly, he has extended *Apprendi* beyond enhancements of the statutory *maximum* to enhancements of the statutory *minimum* as well.

### IV.  *Apprendi* and *Harris*

In *Apprendi*, the Supreme Court held that "[o]ther than a fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory *maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added). However, the *Apprendi* majority also stated that "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed *range of penalties* to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Id.* at 252-53 (emphasis added). While this statement cast some doubt on the belief that *Apprendi* was intended to apply only to enhancements of maximum penalties, the majority also expressly stated it was not overruling *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), which upheld a state statute allowing judges to find minimum penalty enhancement factors by a preponderance of the evidence. *Apprendi*, 530 U.S. at 487 n. 13.

Accordingly, it was unclear whether *Apprendi* applied to mandatory minimum sentences as well. The somewhat conflicting sentiments within the *Apprendi* opinion left the question open for the federal circuits. Every other circuit that had addressed the issue held that *Apprendi* extends only to enhancements above the statutory *maximum* sentence. *See, e.g., U.S. v. Robinson*, 241 F.3d 115, 122 (1st Cir. 2001), *cert. denied*, — U.S. — (2001); *U.S. v. Harris*, 243 F.3d 806, 809 (4th Cir. 2001); *U.S. v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000), *cert. denied*, 531 U.S. 1182 (2001); *U.S. v. Rodgers*, 245 F.3d 961, 965-68 (7th Cir. 2001); *U.S. v. Aguayo-Delgado*, 220 F.3d 926, 933-34 (8th Cir. 2000), *cert. denied*,

531 U.S. 1026 (2000); *U.S. v. Garcia-Sanchez*, 238 F.3d 1200, 1201 (9th Cir. 2001); *U.S. v. Sanchez*, 269 F.3d 1250, 1269 (11th Cir. 2001), *cert. denied*, — U.S. — (2002).[6] However, in cases such as *U.S. v. Flowal*, 234 F.3d 932 (6th Cir. 2000), *U.S. v. Ramirez*, 242 F.3d 348 (6th Cir. 2001), and *U.S. v. Strayhorn*, 250 F.3d 462 (6th Cir. 2001), all involving convictions under 21 U.S.C. § 841, we addressed the issue and extended *Apprendi*'s protections to mandatory minimum sentences, thus rendering us a "minority of one." *U.S. v. Humphrey*, 287 F.3d 422, 454 (6th Cir. 2002) (Rosen, D.J., dissenting); *U.S. v. Stafford*, 258 F.3d 465, 479 n. 9 (6th Cir. 2001) (quoting *U.S. v. Hill*, 252 F.3d 919, 921 (7th Cir. 2001)).

In *Flowal*, the first case in which we applied *Apprendi* to mandatory minimum sentences, the judge found the defendant guilty and found the amount of drugs (five kilograms of cocaine) by a preponderance of the evidence. The judge sentenced Flowal to life — the minimum penalty for defendants with prior drug convictions— under § 841(b)(1)(A). In reversing *Flowal*, we tweaked the *Apprendi* holding, stating "a fact that increases the applicable *statutory range* for a particular crime must be proved beyond a reasonable doubt to the trier of fact." *Flowal,* 234 F.3d at 936 n. 2 (emphasis added). In doing so, we attempted to reconcile *Flowal* with *Apprendi*:

> The government is also correct in noting that a repeat offender who possesses 4.997 kilograms of cocaine can receive life imprisonment under 21 U.S.C. § 841(b)(1)(B). However, such a penalty is not mandatory under the latter provision. This difference is significant in this case because the trial judge's determination of the weight of the drugs took away any discretion in terms of imposing a shorter sentence. It is

---

[6]Even though this Circuit's prior holding that *Apprendi* applies to increases in statutory minimums put it in a more than overwhelming minority with its fellow Circuits, it is interesting to note that the *Harris* result was approved by only a 5-4 margin in the Supreme Court.

not a foregone conclusion that the trial judge would have sentenced Flowal to life without the possibility of release if a jury had determined the drugs weighed 4.997 kilograms. In fact, if the jury had determined that the drugs weighed less than 500 grams, a life sentence would not have even been an option under 21 U.S.C. § 841(b)(1)(C). The judge's determination effectively limited the range of applicable penalties and deprived Flowal of the opportunity to receive less than life imprisonment without the possibility of release.

*Id.* at 937. Accordingly, in *Flowal*, we created a circuit split and broadened *Apprendi* to apply to determinations affecting the judge's discretion to impose a lesser sentence. In this Circuit, any such determination had to be proved to a jury beyond a reasonable doubt. *Id.* at 938.

However, in June, the Supreme Court decided *Harris v. United States*, — U.S.—, 122 S. Ct. 2406 (2002), and resolved the circuit split. In *Harris*, the defendant was charged with carrying a firearm while committing the crime of drug trafficking and was sentenced under 18 U.S.C. § 924(c)(1)(A)(ii), which provides for a minimum sentence of seven years if the firearm was "brandished." Otherwise, the penalty under § 924(c) is five years. Harris challenged his sentence under *Apprendi*, claiming that any factor increasing the mandatory minimum sentence to which a defendant is subject must be proved beyond a reasonable doubt. The *Harris* Court held that anything increasing the statutory *minimum* is a sentencing factor, not an element, and therefore, allowing the judge to determine whether the firearm was brandished by a preponderance of the evidence does not violate the defendant's constitutional rights. *Harris,* 122 S. Ct. at 2416. Moreover, such a practice does not violate *Apprendi*, because *Apprendi* was limited to increases in *maximum* sentences. *Id.* at 2417.

The result in *Harris* is borne from the holding in *McMillan*. In *McMillan*, the Supreme Court upheld the State of Pennsylvania's Mandatory Minimum Sentencing Act, under