**UNITED STATES of America**

**v.**

**Ellis MARTINEZ, Defendant.**

**No. CRIM.02–10018–NG.**

United States District Court,
D. Massachusetts.

Dec. 12, 2002.

criminal punishment until "the truth of *every* accusation" has been found beyond a reasonable doubt by a jury. *Id.* at 477, 120 S.Ct. 2348.

The defendant, Ellis Martinez, was charged with distribution of 3,4 Methylenedioxymethamphetamine/MDMA (also known as "ecstasy") in violation of 21 U.S.C. § 841. The penalty provisions of § 841 distinguish between simple distribution (hereinafter "distribution simpliciter") and distribution accompanied by serious bodily injury (hereinafter "aggravated distribution"). In the case of distribution simpliciter, the penalty ranges from probation to twenty years imprisonment; in the case of distribution accompanied by serious bodily injury, the penalty is twenty years to life imprisonment.

The government seeks to apply the latter provision, even though it has neither alleged bodily injury nor presented any information or evidence on the subject to the grand jury.

By rights, *Apprendi's* protections should be triggered immediately. The offense of conviction, were Martinez to be found guilty, would necessarily be distribution simpliciter, with the lower penalty range— probation to twenty years.

The government agrees, but with a caveat. It concedes that the penalty range is capped at twenty years because it did not charge the aggravated offense as *Apprendi* requires. But it claims that upon a finding of bodily injury by the Court at sentencing, the floor of the range for the aggravated crime may be imported to distribution simpliciter and transformed into a mandatory minimum sentence. In short, the government claims that even though it never charged bodily injury, it should be allowed to offer evidence on the subject at sentencing. Then, if the Court finds bodily injury by a mere preponderance of the

Stephen M. Ouellette, Cianciulli & Ouellette, Beverly, MA, for Plaintiff.

Ruth Ann Lowery, Environmental and Natural Resources, Wildlife and Marine Section, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO DISMISS COUNT III OF THE INDICTMENT

GERTNER, District Judge.

### I. INTRODUCTION

This case involves yet another application of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), one not yet addressed by the existing law in this Circuit. *Apprendi* confirmed and expounded the bedrock constitutional principle that the government cannot impose

evidence, whatever discretion remains under the Guidelines would be wholly eliminated. The Court would be obliged to apply a twenty-year mandatory minimum. That outcome, the government concludes, is consistent with *Harris v. U.S.*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), which held that *Apprendi* does not apply to mandatory minimum sentences.

This analysis is wrong on multiple fronts: Wrong as a reading of § 841, wrong as an interpretation of *Apprendi*, wrong as an interpretation of *Harris*, and wrong as an interpretation of the Guidelines. There is an enormous difference—of Constitutional significance, according to *Apprendi*—between being subject to a penalty range from probation to twenty years, and being subject to a range from twenty years to life. Likewise, there is an enormous difference between being subject to an incremental mandatory minimum within a baseline range depending on a sentencing factor—permissible under *Harris*—and being subject to twenty years, the maximum penalty, with no discretion, no range, and no option. Indeed, these differences are so significant that even the Sentencing Guidelines require that before penalties may be increased to this level, bodily injury must be found as part of the "offense of conviction," and not merely as "relevant conduct," which is a proper basis for enhancement elsewhere in the Guidelines.

There is no dispute that distribution of ecstasy is a serious offense, carrying a very serious statutory penalty—up to twenty years in prison. Congress also concluded that an aggravating circumstance—serious bodily injury caused by the distributed drug—warrants an even more severe penalty of up to life in prison. But before the government can impose a sentence based on a circumstance of this significance, our Constitution requires compliance with certain minimum procedural safeguards: Indictment, jury trial, and proof beyond a reasonable doubt. If the government believes that the facts justify an enhanced penalty, it need only charge the defendant with those facts and prove them to a jury. This is not an unreasonable burden. Any attempt by prosecutors to impose sentence for the aggravated crime under § 841 without charging or proving the predicate facts smacks of an attempt to "have the cake and eat it too" which is both unseemly and, worse, unconstitutional.

For these reasons, explained more fully below, I hereby expressly **FIND** that Mr. Martinez is not subject to a mandatory minimum sentence based on allegations of "serious bodily injury."

## II. *PROCEDURAL BACKGROUND*

On January 16, 2002, defendant Ellis Martinez was indicted on five counts of an eleven count indictment returned against him and four co-defendants. Count ONE charges Mr. Martinez with conspiracy to possess and distribute ecstasy in violation of 21 U.S.C. § 846, Count THREE charges Mr. Martinez and a co-defendant with possession and distribution of ecstacy on August 24, 2001, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), Counts SIX and SEVEN charge Mr. Martinez with distribution of ecstasy on September 25 and 28, 2001, in violation of § 841(a)(1), and Count EIGHT charges Martinez and a co-defendant with possession of ecstasy with intent to distribute on October 15, 2001, in violation of § 841(a)(1).

The government did not present any evidence to the grand jury that Mr. Martinez's alleged distribution of ecstasy on August 24, 2001, resulted in serious bodily injury. No such factual allegation is found in the indictment. However, the caption of Count THREE describes the offense as

"distribution resulting in serious bodily injury." Moreover, the government has advised the defendant that it intends to seek imposition of a 20–year mandatory minimum sentence pursuant to § 841(b)(1)(C), which provides for enhanced penalty if death or serious bodily injury results from use of the distributed substance.

Mr. Martinez has moved to dismiss Count THREE, arguing that "serious bodily injury" is an element of an aggravated offense that must be pleaded in the indictment and proven to a jury before an enhanced penalty under § 841(b)(1)(C) can be imposed. The government acknowledges that "serious bodily injury" would be an "element" subject to requirements of indictment and proof beyond a reasonable doubt for purposes of imposing an enhanced sentence *in excess* of 20 years. But at the same time, the government argues, a judicial finding by preponderance of the evidence that "serious bodily injury" has occurred *also* operates as a "sentencing factor" that requires imposition of a 20–year mandatory minimum.

## III. *LEGAL DISCUSSION*

It is clear under both the statute and the Sentencing Guidelines that Mr. Martinez is not subject to a sentence enhancement based on "serious bodily injury" under the circumstances of this case.

### A. *The Statute*

█ There is no basis in law or logic to treat the twenty-year floor of the enhanced penalty for aggravated distribution as a mandatory minimum under the baseline offense range, which provides for a sentence not to exceed twenty years.

Section 841 of Title 21 provides, in relevant part:

(a) unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally -

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance

.   .   .   .   .

(b) Penalties

(1)(C) In the case of a controlled substance . . . such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life.

21 U.S.C. § 841(a)(1) & (b)(1)(C). The upshot is that a defendant who is convicted of possession and distribution of an unspecified quantity of drugs is subject to a statutory range of up to 20 years. If the use of the drugs distributed by the defendant results in "death or serious bodily injury," the penalty range would jump to twenty years to life imprisonment.

### 1. *Sentencing Factors and Offense Elements After Apprendi*

The fate of Mr. Martinez's motion turns on whether "serious bodily injury" and its penal consequence under § 841(b)(1)(C) can be a "sentencing factor" which can be found by the Court based on a preponderance of the evidence or rather always is an "element" of an aggravated crime that must be charged in the indictment and proven to the jury beyond a reasonable doubt. Mr. Martinez's argument is simple: in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) the Supreme Court essentially defined "element." It held that under the Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty

for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 489, 120 S.Ct. 2348 (invalidating New Jersey statute that imposed enhanced penalty range based on judicial finding that crime was motivated by racial bias).

In this case, the fact of "death or serious bodily injury" plainly increases the maximum statutory penalty under § 841. The maximum sentence of incarceration goes from twenty years for distribution simpliciter to life for the aggravated offense. Therefore, "serious bodily injury" must be an "element" of an aggravated offense with all of the constitutional implications that entails.

The government acknowledges that *Apprendi* would prohibit imposition of a sentence in excess of 20 years without a jury finding of "serious bodily injury." However, it also contends that I nevertheless would be required to impose a 20–year term of imprisonment if I find "serious bodily injury" by a preponderance of the evidence at sentencing. The government's position is, to be charitable, creative. Essentially, the government argues that I must treat the enhanced penalty provisions of § 841(b)(1)(C) as a "mandatory minimum" provision even as I disregard the rest of its express terms, which would improperly confer enhanced sentencing authority above 20 years in this case. Put another way, I am constrained by *some* terms of this section—the twenty years part—but cannot exercise the expanded discretion conferred by the rest of its terms—the "up to life" part. Where "serious bodily injury" is submitted to the jury, it would operate as an "element" with full effect as an enhancement of the sentencing rage up to life in prison; in a case where "serious bodily injury" is not submitted to the jury, it would operate as a "sentencing factor" with a more limited impact, as a 20–year mandatory minimum.

### 2. Mandatory Minimums and Enhanced Ranges after Harris

In support of its position, the government relies chiefly on *Harris v. U.S.*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). *Harris* held that *Apprendi* does not apply to mandatory minimums that operate within the baseline or default maximum penalty. *See id.* at 2419 ("Within the range authorized by the jury's verdict . . . the political system may channel judicial discretion . . . by requiring defendants to serve minimum terms after judges make certain factual findings"). However, this begs the question of whether § 841(b)(1)(C) can fairly be viewed as a "mandatory minimum" at all, or whether the government's reading, which disregards the overall penalty enhancement of that section, amounts to an extended attempt to force a square peg into a round hole.

*Harris* concerned 18 U.S.C. § 924(c)(1)(A), which establishes incrementally escalating minimum penalties for possessing (five years), brandishing (seven years), or discharging a firearm (ten years) in relation to crime of violence or drug trafficking *without changing the overall statutory maximum of life imprisonment.* *See id.* at 2410–11 (majority opinion); at 2424 (Thomas, J. dissenting). The court explained that these provisions "have an effect on the defendant's sentence that is . . . consistent with traditional understandings about how sentencing factors operate." *Id.* at 2412. They do *"not authorize* the judge to impose 'steeply higher penalties'—or higher penalties at all—once the facts in question are found." *Id.* at 2413 (emphasis added). The "subsections alter *only* the minimum." *Id.* (emphasis added).

In effect, the central question that the Court answered affirmatively in *Harris* was whether *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), survived *Apprendi*. *McMillan* also involved a statute that imposed a mandatory minimum based on a judicial finding of firearm possession without exposing the defendant to a higher maximum. The Court's opinion in that case likewise emphasized that the statute "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates *solely* to limit the sentencing court's discretion in selecting a penalty within the range already available ..." *McMillan*, 477 U.S. at 87–88, 106 S.Ct. 2411. Thus, the statutes at issue in *Harris* and *McMillan* involved modest incremental upward adjustments solely of minimum sentences within the framework of a single sentencing range.

In contrast, the statute at issue here, § 841(b)(1)(C), "alters *both* ends of the sentencing range—the floor" shifts from probation to 20 years and the ceiling climbs from 20 years to life. This plainly is a "steeply higher penalty." In light of *Apprendi*, the only reasonable conclusion I can draw from this distinction is that "serious bodily injury," the factual firewall that separates the penalty ranges in § 841(b)(1)(C), is an "element" that must be found by the jury beyond a reasonable doubt. *See Harris*, 122 S.Ct. at 2419 ("Read together, *McMillan* and *Apprendi* mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are the elements of the crime for the purposes of constitutional analysis").

The *Harris* Court's favorable discussion of *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) further supports Mr. Martinez's argument. *See Harris*, 536 U.S. at ——–——, 122 S.Ct. at 2412–13. The Court in *Jones* considered the federal carjacking statute, which, at the time, provided in relevant part:

> Whoever, possessing a firearm ... takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall -
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury ... results, be fined under this title or imprisoned not more than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

18 U.S.C. § 2119 (1988 ed., Supp. V).[1] At first glance, the Court acknowledged, it appears that § 2119 begins with a principal paragraph listing a series of obvious offense elements followed by numbered paragraphs containing sentencing factors. *See Jones*, 526 U.S. at 232, 119 S.Ct. 1215. However, this "superficial impression" is problematic because the numbered paragraphs "not only provide for steeply higher penalties, but condition them on further facts (injury, death) that seem quite as important as the elements in the principal paragraph." *Id.* at 233, 119 S.Ct. 1215.[2]

---

1. Congress amended the statute in 1994 and 1996, but those amendments were not at issue in *Jones* because the underlying events in that case occurred in 1992.

2. The Court also noted that "serious bodily injury" is an offense element in many other statutes. *See Jones*, 526 U.S. at 235, 119 S.Ct. 1215. Indeed, the *Harris* Court emphasized that bodily injury is by nature more likely to be an "element" of an aggravated crime. "Tradition and past practice, for example, were perhaps the most important guideposts

Further, the Court explained, it is "at best questionable whether the specification of facts sufficient to *increase a penalty range by two-thirds,* let alone from 15 years to life, was meant to carry none of the due process safeguards that elements of an offense bring with them for a defendant's benefit." *Id.* at 233, 119 S.Ct. 1215 (emphasis added). The Court continued:

If a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact necessary for a maximum 15–year sentence would merely open the door to a judicial finding sufficient for life imprisonment. It is therefore not a trivial question to ask whether recognizing an unlimited legislative power to authorize determinations setting ultimate sentencing limits without a jury would invite erosion of the jury's function to a point against which a line must necessarily be drawn.

*Id.* at 243–44, 119 S.Ct. 1215. Ultimately, foreshadowing *Apprendi,* the Court concluded that § 2119 established elements of three separate offenses in order to avoid resolving "serious constitutional questions" that would arise if it construed "serious bodily injury" and "death" as mere sentencing factors. *See id.* at 251, 119 S.Ct. 1215.

The government disputes the relevance of *Jones,* characterizing it as non-constitutional, a mere exercise in statutory construction. As a technical matter, it was true at the time *Jones* was published that it did "not announce any new principle of constitutional law." *Jones,* 526 U.S. at 252 n. 11, 119 S.Ct. 1215. Soon thereafter, however, *Apprendi* transformed the constitutional "doubt" animating *Jones* into fully-fledged constitutional law. Indeed, the *Apprendi* court explicitly adopted the language set forth by Justice Stevens in his *Jones* concurrence: "It is unconstitutional for a legislature to remove from the jury the assessment of facts that *increase the prescribed range* of penalties to which a criminal defendant is exposed." *Apprendi,* 530 U.S. at 489, 120 S.Ct. 2348 (quoting *Jones,* 526 U.S. at 252–53, 119 S.Ct. 1215 (Stevens, J. concurring)) (emphasis added).

The parallels between *Jones* and this case are substantial. Both statutes have an initial section setting forth basic offense elements followed by additional sections that tie increased penalties to additional facts. Specifically, the fact of "serious bodily injury" increases the maximum penalty from 15 to 25 years in *Jones* and from 20 years to life here. The stark sentencing consequences of "serious bodily injury" that prompted the court to draw a constitutional line in the carjacking statute at issue in *Jones* are thus even more compelling in the case of § 841(b)(1)(C).[3] In both

---

in *Jones.* The fact at issue there—serious bodily injury—is an element in numerous federal statutes ... and the *Jones* Court doubted that Congress would have made this fact a sentencing factor in one isolated instance." 536 U.S. at ——, 122 S.Ct. at 2412; *see also U.S. v. Wilkes,* 130 F.Supp.2d 222, 232 (D.Mass.2001) (Gertner, J.) (noting that "there are certain traditional sentencing factors and certain traditional substantive factors" and that "authority to mix the two is limited" by the Constitution).

3. Section 841 is also troubling in comparison to the statute at issue in *Jones* because it potentially imposes a life sentence based upon the mere fortuity of bodily injury, which the defendant may not have intended or even foreseen. "The federal carjacking statute [at issue in *Jones* ] provided that *intent* to cause serious bodily injury or death must be proven.... In the drug distribution statute, 21 U.S.C. § 841, the intent to cause injury or death to another person is omitted from the statute altogether. On its face, the statute is,

statutes, the conclusion is inescapable: "Serious bodily injury" is an element of an aggravated crime subject to jury proof beyond a reasonable doubt. *See U.S. v. Rebmann,* 226 F.3d 521, 524–25 (6th Cir. 2000) (holding that because the "serious bodily injury" provisions in § 841 are "factual determinations and because they increase the maximum penalty to which [the defendant] was exposed, we find that they are elements of the offense which must be proven beyond a reasonable doubt").[4]

### 3. *Can "Bodily Injury" Be Both a Sentencing Factor and an Element?*

The government offers no authority for the proposition that I can read § 841(b)(1)(C) selectively to do nothing more than impose a mandatory minimum. If treating "bodily injury" under § 841(b)(1)(C) as a mere sentencing factor is unconstitutional under *Apprendi,* then

the cure is to treat it as an element for all purposes. It is not to ignore certain terms and pretend it is something that it is not, simply because that outcome is convenient for the government. *Cf. U.S. v. Buckland,* 289 F.3d 558, 580 (9th Cir.2002) (en banc) (Hug, J. concurring) (stating that "it strains credulity" to assert that facts should be "treated as sentencing factors in some cases and as elements in others. I know of no statute written in such a manner nor am I aware of any statutes construed this way") (quoting *U.S. v. Vazquez,* 271 F.3d 93, 113 (3d Cir.2001) (en banc) (Becker, J. concurring)); *U.S. v. Promise,* 255 F.3d 150, 185 (4th Cir.2001) (Luttig, J. concurring) ("Either facts that affect the sentence a defendant receives are elements or they are not; they are not elements for some purposes and not for others. And if they are elements, then they must be charged in the indictment"). In-

---

in effect, a strict liability statute with respect to the injury or death of another arising out of the distribution of drugs." *U.S. v. Rebmann,* 226 F.3d 521, 525 (6th Cir.2000) (emphasis in original).

4. In the wake of the Supreme Court's decision in *Harris,* the Sixth Circuit recently declared that "*Rebmann* ... is overruled to the extent it conflicts with *Harris.*" *U.S. v. Leachman,* 309 F.3d 377, 385 (6th Cir.2002). However, as explained *supra, Rebmann* is fully consistent with *Harris* insofar as it prohibits enhancement of a maximum sentence, as opposed to an imposition of a mandatory minimum within the baseline range. Indeed, *Leachman* went on to distinguish *Rebmann* on factual grounds, which suggests that the Sixth Circuit recognized its continued vitality. *See id.* The opinion in *Leachman* also mischaracterized *Rebmann* when it stated, "*Rebmann* dealt with the enhancement of a mandatory minimum under § 841." *Id.* In fact, *Rebmann* dealt with the "bodily injury" provisions of § 841(b)(1)(C) that increased the statutory maximum sentence from 20 years to life. The defendant in *Rebmann* was actually sentenced to 292 months (24–plus years). *See Rebmann,* 226 F.3d at 522.

In any event, the only real quibble that the government asserts against *Rebmann* in its papers here is a purported over-reliance on *Jones.* However, as explained *supra,* the sweep of *Jones* has only expanded in the wake of *Apprendi.* The *Rebmann* court's reasoning from *Jones* is lucid and compelling:

> [I]t would indeed require a casual approach to the trial rights afforded defendants under our Constitution if this court were to allow a trial court to determine that a defendant who pled guilty merely to the physical distribution of a drug (with a corresponding sentence of less than 20 years) is subject to a sentence of up to life imprisonment because the court believed, only by a preponderance of the evidence, that death resulted from that crime regardless of the defendant's intent to harm. The exercise of such extensive power by the trial court in its role as sentencer rather than as factfinder illustrates quite clearly the erosion of the jury trial and the right to have elements of an offense decided beyond a reasonable doubt that the Court so explicitly sought to protect in *Jones.*

226 F.3d at 525.

deed, the very same analysis that the government offers here would have gutted *Apprendi* itself. The Supreme Court in *Apprendi* did not allow the state of New Jersey to treat the floor of the racial bias enhancement as a mandatory minimum based on judicial factfinding, and I will not allow the government to do the same thing with the "bodily injury" enhancement here.

The fact that the two separate statutory sentencing *ranges* in § 841(b)(1)(C) overlap at the magic number of twenty years does not transform the twenty-year floor of the higher enhanced range into a mandatory minimum sentencing factor that can be imported into the baseline range. The Supreme Court has emphasized that sentencing factors typically involve "incremental changes" that are meant to constrain the judge's discretion within a sentencing range by "identify[ing] matters for the sentencing judge's discretion." *Harris,* 536 U.S. at ——, 122 S.Ct. at 2413; *cf. McMillan,* 106 S.Ct. at 2415 (noting that mandatory minimum could be "more or less" than the sentence that the judge otherwise might have imposed). Far from guiding my discretion, the government's position here—that defendants "face a maximum sentence of 20 years *and* a 20-year mandatory minimum sentence"—eviscerates it entirely. Were I to accept the government's invitation to statutory vivisection, "serious bodily injury" would become "a tail which wags the dog of the substantive offense" in this case, which is constitutionally unacceptable. *McMillan,* 477 U.S. at 88, 106 S.Ct. 2411.[5]

### 4. *Is Apprendi Retrospective Only?*

■ The government also suggests that the *Apprendi* analysis should be applied only retrospectively. In other words, the argument goes, *Apprendi* is not implicated in this case unless and until I actually impose a sentence in excess of twenty years. At first glance, the language of several First Circuit cases appears to support this notion. *See, e.g., U.S. v. Eirby,* 262 F.3d 31, 39 (1st Cir.2001) (emphasis added)("*Apprendi* doctrine was concerned with *actual* sentences as opposed to *potential* sentences")(citing *U.S. v. Robinson,* 241 F.3d 115, 121 (1st Cir.2001) ("theoretical exposure to a higher sentence, unaccompanied by the imposition of a sentence that in fact exceeds the otherwise-applicable statutory maximum, is of no consequence")).

However, these cases stand for something less than the sweeping temporal blinders that the government wishes to impose on *Apprendi.* They were necessarily retrospective because proceedings against the defendants began in the pre-*Apprendi* era. The *Apprendi* issues thus were not raised before the trial courts; the Court of Appeals reviewed the claims only for plain error. *See Eirby,* 262 F.3d at 36; *Robinson,* 241 F.3d at 119. In that posture, the First Circuit simply determined, quite sensibly, that it would not overturn pre-*Apprendi* proceedings based on "theoretical" exposure to a higher sentence where the actual sentence fell within the default maximum.

**5.** Notably, moreover, even before *Apprendi* the First Circuit prohibited judicial factfinding which would substantially increase the severity of a sentence. *See, e.g., U.S. v. Lombard,* 72 F.3d 170, 176 (1st Cir.1995) (rejecting mandatory life term for firearm charge based on "related conduct" of murder, for which defendants were acquitted in state court; "Supreme Court decisions on sentencing, while generally endorsing rules that per-

mit sentence enhancements to be based on conduct not proved to the same degree required to support a conviction, have not embraced the concept that those rules are free from constitutional constraints. On the contrary, the Court has cautioned against permitting a sentence enhancement to be the 'tail which wags the dog of the substantive offense' ").

It would be absurd to suggest, based on bald language in *Robinson* and *Eirby* ripped from context, that trial courts in the post-*Apprendi* era should proceed as if *Apprendi* did not exist, embedding constitutional error in the proceedings that can only be cured by judicial abstention from excess sentencing authority. The language of *Apprendi* and its progeny, which must guide my conduct of criminal cases, is emphatically prospective: *See, e.g., Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002) (holding that if a statute "makes an increase in a defendant's *authorized* punishment contingent on the finding of a fact, that fact ∴ . must be found by a jury beyond a reasonable doubt") (emphasis added); *Harris*, 536 U.S. at ——, 122 S.Ct. at 2417 ("Any 'fact that . . . *exposes* the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone' . . . would have been, under the prevailing historical practice, an element of an aggravated offense")(emphases added and omitted)(internal citation omitted); *Apprendi*, 530 U.S. at 489, 495, 120 S.Ct. 2348 ("[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is *exposed* " and "[w]hen a judge's finding based on a mere preponderance of the evidence *authorizes* an increase in the maximum punishment it is appropriately characterized as 'a tail which wags the dog of the substantive offense' ")(emphases added); *Derman v. U.S.*, 298 F.3d 34, 42 (1st Cir.2002) (finding that *Apprendi* error had occurred

where court did not ask jury to determine beyond a reasonable doubt whether underlying conspiracy involved a drug quantity sufficient to trigger a sentence higher than the five-year default statutory maximum); *U.S. v. Buckland*, 289 F.3d 558, 581 (9th Cir.2002)(en banc)(Hug, J. concurring)("The same standard should be applied prospectively and retrospectively. '[D]oes the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?' The inquiry should not be governed by whether the judge's sentence exceeded the statutory maximum") (citation omitted); *U.S. v. Thomas*, 274 F.3d 655, 660 (2d Cir.2001)("if the type and quantity of drugs in a charged crime may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs, then the type and quantity of drugs is an element of the offense that must be charged in the indictment and submitted to the jury").[6] In short:

> If a defendant *faces* punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the [government] is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached.

*Apprendi*, 530 U.S. at 484, 120 S.Ct. 2348 (emphasis added).[7]

---

**6.** As Mr. Martinez points out, this authority supercedes the government's string citation of pre-*Apprendi* cases for the now-discredited proposition that drug quantity is a mere sentencing factor.

**7.** Careful examination of the underlying sentence in *Apprendi* further undermines the gov-

ernment's "retrospective" impact focused analysis, which boils down to a kind of "no harm, no foul" argument. The Supreme Court overturned Apprendi's twelve-year sentence on one count, which was enhanced over a ten-year maximum based on a finding of racial bias, *even though the lower court could have imposed a sentence of up to twenty years*

## B. *The Sentencing Guidelines*

■ The government also suggests that even apart from the statute, I should take "serious bodily injury" into consideration as a sentencing factor under the Guidelines. However, this approach would not only conflict with the constitutional teachings of *Apprendi*, described above, it would do violence to the plain language of the Guidelines themselves.

The language of the Sentencing Guidelines is explicit: where the *"offense of conviction establishes* that death or serious bodily injury resulted from the use of the substance," the base offense level is increased to 38. U.S.S.G. § 2D1.1 (emphasis added). Significantly, the Guidelines make no reference to the "offense of conviction" with respect to certain other facts that affect the sentence drug distribution. *See, e.g.,* § 2D1.1(a)(3)(drug quantity). The "relevant conduct" provisions under § 1B1.3 expressly permit consideration of uncharged evidence, but with the proviso—"unless otherwise specified." Taking the Guidelines to mean what they expressly say, I would have to conclude that they have specified an "offense of conviction" and not a "real offense" approach to bodily injury findings. *See* U.S.S.G. Ch. 1 Pt. A4 (a).

In this case, the offense of conviction would not "establish" that serious bodily injury took place, because the indictment does not charge bodily injury as an element of the offense. The jury, in reaching a conviction, would not have passed on that alleged fact. *See U.S. v. Pressler,* 256 F.3d 144, 157–58 n. 7 (3d Cir.2001) (recognizing that " 'offense of conviction' includes only the facts undergirding the specific offense for which the defendant was convicted" whereas " 'Relevant Conduct' includes other uncharged and related activities" and thus a charge of distributing an unspecified quantity of heroin under § 841 "did not 'establish' that 'death or serious bodily injury resulted from the use of the' heroin that [defendant] conspired to distribute"); *U.S. v. Lombard,* 72 F.3d 170, 181 (1st Cir.1995) (recognizing distinction between punishment for "the offense of conviction" and punishment for "enhancing conduct"). Therefore, if Mr. Martinez were convicted, I would be without authority to impose the "bodily injury" enhancement under the Guidelines.

■ Even if it were appropriate under the Guidelines' plain language (which it is not) to impose the level 38 base offense enhancement for "serious bodily injury," it would be constitutionally impermissible to do so under *Apprendi.* Without the base level enhancement for "serious bodily injury", the Guidelines range hinges on drug quantity, which climbs incrementally from a base level of 6. At level 6, the defendant would face a penalty ranging from probation (floor of criminal history category I) to 18 months incarceration (ceiling of criminal history category VI). At level 38 (the level associated with serious bodily injury), by contrast, the sentence would range from 235 months (floor of criminal history category I) to 405 months (ceiling of crimi-

*without any enhancement* by exercising discretion to run ten-year sentences for two counts consecutively, rather than concurrently. *See Apprendi,* 530 U.S. at 470, 120 S.Ct. 2348. "If the judge found no basis for the biased purpose enhancement, the maximum consecutive sentences on [the] counts [of conviction] would amount to twenty years in aggregate; if, however, the judge enhanced the sentence on [one of the counts], the maximum on that count alone would be 20 years and the maximum for the two counts in aggregate would be 30 years . . . ." *Id.* In other words, improper exposure to a 30–year enhanced maximum aggregate sentence triggered reversal even though Apprendi's actual sentence of 12 years was within the 20–year baseline aggregate maximum.

nal history category VI).[8] The resulting penalty would thus be identical (or nearly identical) to the minimum penalty for aggravated distribution under § 841(b)(1)(C).

This approach would allow the government to ride the Guidelines roughshod over the constitutional protections enshrined in *Apprendi*. The Guidelines use of "bodily injury" was not invented out of whole cloth; rather, it clearly reflects an effort (drafted pre-*Apprendi*) to knit the statutory penalty ranges into the Guidelines calculations. It would make no sense to hold that I cannot impose an automatic 20-year sentence based on a finding of serious bodily injury under the statute and then reach the same result under the Guidelines alone, which are derivative of that very statute.

## IV. *CONCLUSION*

For all of the foregoing reasons, Mr. Martinez's Motion to Dismiss Count Three Or, in the Alternative for a Ruling That a Mandatory Minimum Sentence Cannot Be Imposed [document # 68] is **GRANTED** in that I expressly **FIND** that Mr. Martinez is not subject to a mandatory minimum sentence based on allegations of "serious bodily injury."

**SO ORDERED.**

---

**8.** Of course, the actual sentence would be capped at the statutory maximum of 20 years (240 months) under § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable Guideline range, the statutorily authorized maximum sentence shall be the guideline sentence").