RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0046P (6th Cir.)
File Name: 03a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  v.       No. 01-5210

DEMETRIC WADE,
   *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 00-00029—Curtis L. Collier, District Judge.

Argued: December 13, 2002

Decided and Filed: February 11, 2003

Before: BATCHELDER and MOORE, Circuit Judges;
FORESTER, Chief District Judge.

———————————

## COUNSEL

**ARGUED:** Rita C. LaLumia, FEDERAL DEFENDER
SERVICES OF EASTERN TENNESSEE, INC.,
Chattanooga, Tennessee, for Appellant. Perry H. Piper,

---

 &ast;The Honorable Karl S. Forester, Chief United States District Judge
for the Eastern District of Kentucky, sitting by designation.

ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Rita C. LaLumia, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

————————

## OPINION

————————

KAREN NELSON MOORE, Circuit Judge. Defendant Demetric Wade appeals from his sentence for a drug trafficking offense and from his conviction for carrying a firearm during and in relation to a drug trafficking offense. Although the quantity of drugs for which Wade was sentenced had not been proven beyond a reasonable doubt, we affirm his sentence in light of the Supreme Court's holding in *Harris v. United States*, __ U.S. __, 122 S. Ct. 2406 (June 24, 2002), that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not apply to mandatory minimums. However, because there was insufficient evidence to show that Wade foresaw or should have foreseen that his coconspirator would be carrying a firearm, we reverse his firearm conviction.

## I. BACKGROUND

On September 14, 1999, detectives from the Hamilton County Sheriff's Department used Chris Eustis, a confidential informant, to arrange a drug purchase. Eustis called Demetric Wade, who had once offered to sell him drugs, and arranged to buy one ounce of crack cocaine; they agreed to meet in the parking lot of a local restaurant. Wade arrived at the parking lot a few minutes later, driving a car that contained three passengers. The passenger directly behind Wade's driver's seat was Bobby Smith.

The detectives approached Wade's car, and Detective Mark King approached the driver's side rear door, where Bobby Smith was sitting, and said, "Place your hands up." J.A. at

outside of the plea agreement to determine drug quantity at sentencing . . . the principles articulated in *Apprendi* are not implicated."

*Harris* and *Leachman* control this case. Wade argues that the finding of seven grams, which triggered the statutory mandatory minimum, should have been found beyond a reasonable doubt. However, *Harris* and *Leachman* make clear that such factors need not be found beyond a reasonable doubt. Further, as in *Leachman* and *Harper*, Wade's plea agreement specifically identified the quantity for which he would held responsible. We affirm Wade's drug sentence.

## IV. CONCLUSION

Because there was insufficient evidence to support Wade's firearms conviction based on *Pinkerton* liability, we **REVERSE** Wade's firearm conviction. However, because *Apprendi* principles do not apply to factors that increase a sentence to a mandatory minimum, we **AFFIRM** Wade's drug sentence.

novo. *See United States v. Canestraro*, 282 F.3d 427, 430-31 (6th Cir. 2002). However, because Wade failed to object to the district court's determination of the drug quantity, we review for plain error. *See United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000), *cert. denied*, 532 U.S. 1056 (2001).

Under 21 U.S.C. § 841(b)(1)(B)(iii), an individual who is convicted of distributing five or more grams of cocaine base is subject to a mandatory minimum of five years in prison. Although Wade pleaded guilty to and was convicted of a distribution conspiracy involving seven grams, he argues that his sentence violated his rights to have the quantity determined beyond a reasonable doubt by a jury pursuant to *Apprendi*. Since the district court issued its sentence, the Supreme Court decided *Harris v. United States*, __ U.S. __, 122 S. Ct. 2406 (June 24, 2002), which we applied to facts similar to those at issue here in *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002).

In *Harris*, the Supreme Court held that, unlike factors increasing a sentence beyond the statutory maximum, factors increasing the mandatory minimum sentence need not be determined by a jury beyond a reasonable doubt. *See Harris*, 122 S. Ct. at 2416-17 (plurality); 2420-22 (Breyer, J.). We applied this interpretation in *Leachman*, in which a defendant who pleaded guilty to possessing over 1300 marijuana plants challenged his sentence to the mandatory minimum of ten years as a violation of his rights under *Apprendi*. We ruled that the reasoning of *Harris*, which involved a conviction for carrying a firearm while committing a drug trafficking offense, applied to convictions for conspiracy to distribute under § 841. *Leachman*, 309 F.3d at 383. We also noted that even notwithstanding *Harris*, by pleading guilty to an indictment that identified the specific quantity, the defendant had "effected a knowing and voluntary waiver of his constitutional rights to a jury and to proof beyond a reasonable doubt." *Id*. As we stated in *United States v. Harper*, 246 F.3d 520, 530-31 (6th Cir. 2001), when a defendant "stipulated to the amount of drugs for which he was held responsible, and the district court did not rely on any fact

63-64. Smith reached down towards the floorboard of the car, King shouted again, and Smith came back up. Smith then reached down again and came back up. At this point, King removed Smith from the car and found a loaded Sig Sauer 9 mm firearm in the floorboard area where Smith had been sitting. The detectives searched Smith and found approximately seven grams of crack and twenty-two grams of powder cocaine. Detective King estimated at trial that the drugs had a street value of approximately $1,100.

Wade was arrested and charged with, among other offenses, conspiracy to distribute crack, a violation of 21 U.S.C. § 841, and carrying a firearm during and in relation to a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § (2). Pursuant to a plea agreement in which the Government dismissed other charges, Wade agreed to plead guilty to the conspiracy to distribute charge, and he accepted a non-jury trial on the firearm charge. The plea agreement acknowledged that Bobby Smith, Wade's coconspirator, was carrying seven grams of crack, twenty-two grams of powder cocaine, and a handgun. The PSR confirmed this quantity of drugs.

After a bench trial, Wade was convicted of carrying a firearm during and in relation to a drug trafficking crime. The district court reasoned that, although there was no evidence that Wade was carrying a gun or had any knowledge that Smith was carrying a gun, under *Pinkerton v. United States*, 328 U.S. 640 (1946), Wade could be guilty of offenses committed by coconspirators. The district court relied on the parties' statement at trial that they would stipulate to the fact that the caselaw is replete with the theory that guns are often the tools of the drug trade, and the court concluded that "one could reasonably foresee that at least one of the defendants involved in the Arby's transaction would be carrying a gun." J.A. at 22. Wade was thus convicted based on *Pinkerton* liability and sentenced for the gun offense to § 924(c)(1)(A)(i)'s mandatory five-year term.

For the conspiracy to distribute offense, Wade was sentenced to the mandatory-minimum five years for a quantity of crack in excess of five grams. The district court, after expressing concern over the harshness of the five-year firearm sentence due to *Pinkerton*, departed downward three levels on the drug offense, resulting in a guideline range of 51-63 months; the court stated that it would have departed further if it had not thought itself bound by the mandatory minimum of five years on the drug conviction. With respect to the mandatory minimum, the court noted during the sentencing hearing that no drug quantity had been alleged in the indictment and that there had been no finding of the quantity beyond a reasonable doubt. However, the court concluded that *Apprendi* did not apply to mandatory minimums, and it sentenced Wade to five years for the drug offense.

On December 8, 2000, Wade was sentenced to two consecutive five-year sentences. Wade timely appealed, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II. THE FIREARM CONVICTION

Wade argues that his due process rights were violated when he was convicted of firearm possession based on *Pinkerton* liability. Under *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946), a defendant can be convicted for the criminal acts of a coconspirator so long as the crime was foreseeable and committed in furtherance of the conspiracy. *See United States v. Christian*, 942 F.2d 363, 367 (6th Cir. 1991), *cert. denied*, 502 U.S. 1045 (1992). Here, however, there was insufficient evidence to find that Wade should reasonably have foreseen that one of his coconspirators would carry a firearm.

In determining whether the evidence supporting Wade's conviction is sufficient, we must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002)

in a transaction involving a gun. Nothing indicates that he had a close relationship to any wholesale dealers. Nothing indicates that the gun was carried in an open manner that Wade would have noticed. In fact, the gun was carried by the passenger in the seat behind Wade and was eventually placed on the floorboard in front of that passenger. Again, this makes the case similar to *Cochran*, in which the gun was hidden under the coconspirator's seat. *Cochran*, 14 F.3d at 1133.

Although all reasonable inferences must be drawn in the Government's favor, this case's many similarities to *Cochran* — and its many differences from those cases in which we have found sufficient evidence of foreseeability — suggest that the evidence here was insufficient. The evidence supports an inference that Wade was a small-time drug dealer. The question is whether the parties' stipulation that firearms are often the tools of the drug trade provides the missing step on which a fact finder could conclude that a small-time dealer should have foreseen the firearm possession of a coconspirator. Although *Jackson* requires that all permissible inferences be drawn in the Government's favor, case law suggests that this inference is permissible only in the case of conspiracies that are much larger and thus more likely to require protection. To be sure, a coconspirator's firearm possession could be foreseeable to a small-time drug dealer if evidence showed certain experiences of that defendant made the coconspirator's possession foreseeable. However, that evidence was not present here, and so we reverse Wade's firearm conviction.

## III. SENTENCE FOR DRUG CONVICTION

Wade also argues on appeal that the district court erred by imposing the mandatory minimum five-year sentence for the drug offense when no drug quantity had been alleged in the indictment or found beyond a reasonable doubt. His argument turns on the purely legal question of whether *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to his case. We review legal determinations regarding sentencing de

present case, there is scant evidence from which a finder of fact could have inferred that it was reasonably foreseeable to Wade that his coconspirator would carry a gun. Although there can be no bright line value above which firearm possession is foreseeable, it is worth noting that the $1,100 transaction here is a far cry from the large amounts that have supported a finding of foreseeability based solely on the monetary value involved, *see supra*. The relatively small value makes this case very similar to the facts at issue in our decision in *Cochran*, in which "[t]he only evidence that possibly could support [an enhancement for firearm possession based on reasonable foreseeability] was the defendant's admission that he knew [the coconspirator] sometimes carried up to $1,000 when buying drugs, and that he 'guess[ed] the big-time dealers, they probably try to do bodily harm.'" *Cochran*, 14 F.3d at 1133. We ruled that this evidence was insufficient to support a finding that the coconspirator's gun possession was reasonably foreseeable. *Id.* Even if Wade were a major player in this particular transaction, this transaction was relatively small in comparison to other cases in which firearm possession has been ruled foreseeable. The inferences that could be drawn merely from Wade's participation in a drug conspiracy, apparently as a retail dealer for a $1,100 sale, are limited.

There is also very little evidence that Wade was so deeply involved in the drug trade that he would foresee the firearm possession. Drawing all permissible inferences in favor of the government, the evidence undoubtedly shows that Wade could supply individuals with crack. The confidential informant testified that Wade had told him to call if he needed anything, which the informant understood to mean crack; when the detectives asked the confidential informant to arrange a drug deal, the informant called Wade. *Jackson* requires us to assume that this is true. The evidence could also support an inference that this was not Wade's first drug transaction, as the fact that the informant understood Wade to be offering to sell drugs suggests that Wade had some sort of reputation. However, nothing indicates that Wade had ever carried a gun in such a transaction, or had ever been involved

(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We "view both circumstantial and direct evidence in a light most favorable to the prosecution," *id.*, and "we draw all available inferences and resolve all issues of credibility in favor of the [factfinder's] verdict," *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir.), *cert. denied*, 122 S. Ct. 263 (2001), *and cert. denied*, 122 S. Ct. 306 (2001).

Here, although the evidence is not in dispute, it is insufficient to support Wade's conviction. Four facts from the trial might support the finding that Wade should have foreseen that Smith would be carrying a gun. First, the parties stipulated that the case law is replete with the theory that guns are often the tools of the drug trade. Second, the transaction was to involve a quantity of cocaine and cocaine base that would have a street value of approximately $1,100. Third, the confidential informant testified that Wade had once told him that "if [the informant] needed something, to call him," which the informant understood as an offer to sell him crack. J.A. at 53 (Eustis Test.). Fourth, the informant called Wade in order to arrange the transaction, and Wade drove the car in which Smith arrived with the drugs and the gun.

We may infer that a defendant in a drug conspiracy should have foreseen his coconspirator's firearm possession, but the evidence supporting that inference must be more than a mere generalized presumption that drug transactions involve guns. As we stated in *United States v. Cochran*, 14 F.3d 1128, 1133 (6th Cir. 1994), we are "not willing to indulge the fiction that a firearm's presence always will be foreseeable to persons participating in illegal drug transactions. . . . Rather, at a minimum, we require that there be objective evidence that the defendant knew the weapon was present, or at least knew it was reasonably probable that his coconspirator would be armed." We ruled in *Cochran* that a coconspirator's firearm possession was not reasonably foreseeable in a drug conspiracy when the gun was hidden from the defendant's view and there was no evidence that the conspiracy involved violence or large quantities of drugs. *Id.*

We are willing to infer that a coconspirator's firearm possession is foreseeable only when the quantity of drugs involved is so large that those involved would expect others to be carrying protection. Although the $1,100 worth of crack and powder cocaine involved here is not insubstantial, it is a far cry from the huge quantities involved when we have found firearm possession to be foreseeable. *See, e.g.*, *United States v. Myers*, 102 F.3d 227, 230, 238 (6th Cir. 1996) (finding foreseeability when defendants had $5000 cash and the coconspirator stated that the defendants knew of his gun's presence), *cert. denied*, 520 U.S. 1223 (1997); *United States v. Odom*, 13 F.3d 949, 959 (6th Cir.) (finding gun possession foreseeable when the conspiracy involved at least 2.385 kilograms of cocaine), *cert. denied*, 511 U.S. 1094 (1994), *and cert. denied*, 513 U.S. 836 (1994); *Christian*, 942 F.2d at 367 (finding foreseeability when conspirators' car contained $60,000). Cases in other circuits have involved similarly high quantities. *See, e.g.*, *United States v. Bailey*, 235 F.3d 1069, 1073, 1074 (8th Cir.) (stating that "the carrying of firearms was reasonably foreseeable as a natural outgrowth of trafficking in large amounts of cocaine and cocaine base and the cash generated therefrom," when one conspirator was found with $64,225), *cert. denied*, 534 U.S. 879 (2000); *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1204 (9th Cir. 2000) (concluding that eighty-three pounds of marijuana, valued at $450-750 per pound in the local market, supported foreseeability); *United States v. Sandoval-Curiel*, 50 F.3d 1389, 1393 (7th Cir. 1995) (determining that a reasonable jury could find foreseeability based on the "sizeable amount of money" involved, which was $104,000); *United States v. Elwood*, 993 F.2d 1146, 1148, 1151 (5th Cir. 1993) (finding foreseeability "given the substantial quantity of drugs involved," which was over two kilograms of cocaine); *United States v. Gutierrez*, 978 F.2d 1463, 1469 (7th Cir. 1992) (finding foreseeability when conspiracy involved two kilograms of cocaine valued at $60,000).

We are also willing to look at the degree of the defendant's involvement in the conspiracy. When evidence shows that the defendant was very involved or experienced in the drug

trade, we can infer that the defendant knew of the common link between guns and drugs and thus that a coconspirator's firearm possession was reasonably foreseeable. And again, although Wade's conviction for drug trafficking seems well-deserved, there is simply no basis on which we can find the substantial experience in the drug trade that would have taught him of the nexus between guns and drugs. *See, e.g.*, *United States v. Ramos*, 147 F.3d 281, 286-87 (3d Cir. 1998) (finding foreseeability when evidence showed that defendant himself had carried a gun in previous drug transactions); *United States v. Fonseca-Caro*, 114 F.3d 906, 908 (9th Cir. 1997) (same), *cert. denied*, 522 U.S. 1097 (1998); *United States v. Friend*, 50 F.3d 548, 553-54 (8th Cir. 1995) (finding foreseeability when evidence showed defendant's close relationship to the coconspirator and the defendant's discussions of his long-time involvement in the drug business), *cert. granted and judgment vac. on other grounds*, 517 U.S. 1152 (1996); *see also United States v. Masotto*, 73 F.3d 1233, 1242 (2d Cir.) (finding coconspirator's firearm possession was foreseeable in a robbery because testimony established that the defendant knew of his coconspirators' practice of doing so), *cert. denied*, 519 U.S. 810 (1996).

Finally, we may look at the manner in which the coconspirator carried the gun. If the coconspirator carried the gun in a manner that would have made it visible, fact finders may infer that the defendant knew of its presence. *See, e.g.*, *Alvarez-Valenzuela*, 231 F.3d at 1204 (determining that when gun was stuck in the coconspirator's waistband, and coconspirator would have needed to adjust it regularly during their travels, the defendant should have known of its presence); *United States v. Resko*, 3 F.3d 684, 696 (3d Cir. 1993) (determining that defendant should have known of gun when coconspirator placed it on a bed, out in the open). Here, the gun was apparently carried on the floor of the back seat, directly behind the driver's seat — a place most hidden from Wade's view as the driver.

Although there might be other bases on which to find that a coconspirator's firearm possession was foreseeable, in the