FILED
United States Court of Appeals
Tenth Circuit

June 8, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BAYRON MOREIRA,

Defendant-Appellant.

No. 07-3303
(D. Kan.)
(D.C. No. 2:06-CR-20021-KHV-13)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **MCKAY,** and **BALDOCK** Circuit Judges.

---

Bayron Moreira pleaded guilty to distribution of methamphetamine and
conspiracy to possess with the intent to distribute methamphetamine, cocaine, and
marijuana.  He was sentenced to 151 months' imprisonment.  On appeal, Mr.
Moreira contends that the district court erred in assessing a two level upward
adjustment to his base offense level for possession of a firearm pursuant to U.S.
Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(b)(1); that he was entitled to
a two level reduction for being a minor participant in the conspiracy pursuant to

---

[*]    This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

U.S.S.G. § 3B1.2(b); and that his attorney was ineffective in failing to advise him of the consequences of waiting until the day of trial to plead guilty and in failing to properly advocate for a minor role reduction at the sentencing hearing and also in his *Anders v. California*, 386 U.S. 738 (1967) brief.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we **AFFIRM** the district court's judgment, but **DENY** counsel leave to withdraw.

## BACKGROUND

As part of an ongoing investigation of a drug trafficking conspiracy, Drug Enforcement Administration ("DEA") agents in Kansas City, Kansas, arranged for a confidential source to make a controlled purchase of methamphetamine. The confidential source called Hector Moreira, who told him where to go to make the purchase.[1] Hector Moreira sent the defendant, Bayron Moreira ("Mr. Moreira"), to make the drug sale. After observing the transaction, the DEA agents followed Mr. Moreira to the home of a coconspirator, Alberto Perez-Jacome, at 1814 Bunker Avenue.

Subsequently, Mr. Moreira was arrested at his home in Belton, Missouri. DEA agents also arrested Hector Moreira and Mr. Perez-Jacome at the Bunker

---

[1] Hector Moreira ultimately was charged with drug trafficking offenses arising from this investigation and pleaded guilty. He challenged certain aspects of his sentence on appeal, and we affirmed. *See United States v. Moreira*, No. 07-3307, 2008 WL 4787157, at *1 (10th Cir. Nov. 4, 2008), *cert. denied*, 129 S. Ct. 1600 (2009).

2

Avenue house.  The three were the only members of the conspiracy who had not

yet been arrested.  As part of the search of the Bunker Avenue house, the agents

found large amounts of drugs and drug paraphernalia.[2]

---

[2]

| | |
|---|---|
| Kitchen area | 415.7 net grams cocaine hydrochloride (68 percent purity) (found in three plastic bags on counter) |
| | 82.8 net grams of a methamphetamine hydrochloride mixture, 19 grams of which was pure (22.9 percent purity) (found in three plastic bags located on top of stove) |
| | 62.7 net grams of a methamphetamine hydrochloride mixture, 15.6 grams of which was pure (24.8 percent purity) (found in three plastic bags located in freezer) |
| | 241.2 net grams of marijuana (found in two plastic bags in drop ceiling) |
| | Two scales (one found on kitchen counter and one found on cabinet shelf) |
| North bedroom | 20.4 net grams cocaine hydrochloride (85 percent purity) (found under mattress) |
| South bedroom | 245.6 net grams cocaine hydrochloride (94 percent purity) (found on closet shelf) |
| | Approximately 19 kilograms marijuana (found in several packages and bags) |
| Family room | 1.021 kilograms cocaine hydrochloride (62 percent purity) (found in drop ceiling) |
| | 59.5 grams 3,4-Methylenedioxymethamphetamine Hydrochloride (ecstasy), 7.2 grams of which was pure (contained in 225 tablets found in two bags in drop ceiling) |
| | 848.1 net grams cocaine hydrochloride (43 percent purity) (found in grocery bag in |

(continued...)

3

Additionally, the agents found in a drop ceiling four handguns, an AK-47 assault rifle, an SKS Norinco assault rifle, various magazines, a large amount of ammunition, and over $7,000.

Mr. Moreira and twelve codefendants were charged in a twenty-one count Second Superseding Indictment.  Mr. Moreira was named in two counts with: (1) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, 500 grams or more of cocaine, 50 grams or more of methamphetamine, and a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(ii), (b)(1)(D), 846, and 18 U.S.C. § 2; and (2) distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii), and 18 U.S.C. § 2.  Mr. Moreira waited until the day of trial before pleading guilty to both counts.  Although there was no plea agreement, the government agreed to recommend a sentence at the low-end

--------

[2](...continued)

drop ceiling)
221 net grams of a methamphetamine hydrochloride mixture, 50.8 grams of which was pure (23 percent purity) (found in eight bags contained within a larger bag found in drop ceiling)
220.9 net grams of a methamphetamine hydrochloride mixture, 53 grams of which was pure (24 percent purity) (found in eight bags contained within a larger bag found in drop ceiling)

R., Vol. IV, ¶ 69 at 17-18 (Presentence Report, dated July 16, 2007) [hereinafter "PSR"].

of the applicable Guidelines range.

A presentence report ("PSR") was prepared. In addition to the controlled purchase, the PSR noted that a witness told the agents that Mr. Moreira was "present at drug transactions on several occasions." PSR, *supra*, ¶ 76 at 19. On those occasions, Mr. Moreira was present with two other individuals who reportedly were Hector Moreira's "lieutenants." *Id.* ¶ 73, at 19 (witness identifying Kenet Del Cid-Rendon and Edguar Lizardo-Figueroa as "lieutenants"). Another witness admitted to buying cocaine from Mr. Moreira "a few times." *Id.* ¶ 77 at 19. The PSR concluded that Mr. Moreira was accountable for all of the drugs found in the Bunker Avenue house, the methamphetamine from the controlled purchase, and, based on the witnesses' statements, three additional transactions, each deemed to be of the same quantity and purity as the controlled purchase.

Mr. Moreira's base offense level was 34. Mr. Moreira was assessed a two level upward adjustment for possession of a firearm based on the weapons found in the Bunker Avenue house pursuant to U.S.S.G. § 2D1.1(b)(1). Mr. Moreira did not personally possess the firearms. Rather, the PSR noted that the weapons were possessed by his coconspirators, and it was not "clearly improbable that the firearms were connected to drug trafficking activities for which Bayron Moriera is accountable." *Id.* ¶ 91 at 22. Mr. Moreira received a two level downward adjustment for acceptance of responsibility. Based on a total offense level of 34

and a criminal history category of I, the recommended Guidelines sentence was 151 to 188 months.

Mr. Moreira filed several objections to the PSR. First, he objected to the two level upward adjustment for possession of a firearm. Second, he argued that he should have received a downward adjustment for playing a minor or minimal role in the offense. Third, he objected to the government's failure to request that he receive the third level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b). Fourth, he claimed he should have received a two level downward adjustment under the "safety valve" provision of § 5C1.2. Fifth, he objected to the calculation of the amount of drugs attributable to him. The PSR author, however, did not find Mr. Moreira's arguments convincing and made no changes to the PSR.

At the sentencing hearing, the court considered and overruled all of Mr. Moreira's objections. After hearing testimony, the court accepted the findings of the PSR in full and sentenced Mr. Moreira to 151 months' imprisonment. This appeal followed. Finding that there were no nonfrivolous grounds to appeal, Mr. Moreira's counsel filed an *Anders* brief.[3] Mr. Moreira filed a thorough and well-

---

[3] Mr. Moreira's counsel did not seek leave to withdraw in his *Anders* brief. Nor did he file a separate motion to withdraw. However, we assume that it was counsel's intention to seek leave to withdraw: surely he would not wish to continue representation in a case he deemed to be frivolous, and he expressly filed Mr. Moreira's brief pursuant to *Anders*, which specifically contemplates that

(continued...)

researched response to the *Anders* brief (entitled "Memorandum of Law in Support of Appellant's Response to Anders Brief" [hereinafter "Aplt. Resp. Br."]).[4] And we subsequently ordered and heard oral argument.

## DISCUSSION

Under *Anders*, counsel may request permission to withdraw after counsel conscientiously examines the record and determines that any appeal would be wholly frivolous. *Anders*, 386 U.S. at 744. However, counsel must submit a brief

---

[3](...continued)
counsel will request to withdraw, *Anders*, 386 U.S. at 744 ("Of course, if counsel finds his case to be wholly frivolous . . . he should so advise the court and request permission to withdraw."). For the reasons noted below, however, we conclude that the assumed request of Mr. Moreira's counsel to withdraw should be denied.

[4] In his *Anders* brief, Mr. Moreira's counsel presents a challenge to the district court's computation of the drug amount attributable to Mr. Moreira, asserting that the court clearly erred in attributing 29.1 actual grams of methamphetamine to him in reliance upon the "vague" assertions of a confidential informant, who had an "expectation of a reward" from the government. Aplt. Op. Br. at 16-17. However, Mr. Moreira chose not to pursue this argument in his response brief. We need not determine whether Mr. Moreira has abandoned the argument. Even if it were properly before us, we would conclude that this contention is unavailing. The controlled buy from Mr. Moreira provided a concrete benchmark (i.e., actual narcotics in custody) from which the district court could extrapolate the drug quantity involved in prior sales for purposes of the Guidelines and, as the PSR author noted, PSR, *supra*, ¶ 165, at 36, witnesses beyond the confidential informant testified to prior sales of narcotics, which could support the Guidelines drug quantity attributable to Mr. Moreira. *See United States v. Ballard*, 16 F.3d 1110, 1115 n.5 (10th Cir. 1994); *United States v. Beaulieu,* 893 F.2d 1177, 1180-81 (10th Cir. 1990); *cf. United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir. 1993) ("The only evidence in the record supporting the district court's finding that Defendant distributed ninety-seven kilograms of marijuana is an out of court statement by a confidential informant."). Accordingly, we do not address this contention further.

7

to the client and this court indicating any potential appealable issues based on the record. *Id.* The client may then, in response, choose to submit arguments to the court. *Id.* If we conclude after full examination of the record that the appeal is wholly frivolous, we may grant counsel's request to withdraw. *Id.* Accordingly, we would affirm the district court's judgment. *Id.*

After a thorough and independent review of the record and consideration of both Mr. Moreira's response brief and the *Anders* brief, we conclude that the frivolousness assessment of Mr. Moreira's counsel is correct, but only in substantial part. With the exception of Mr. Moreira's challenge to the firearm enhancement, his appellate issues are indeed frivolous and, in somewhat summary fashion, we reject his contentions. As to the firearm enhancement, however, we conclude that Mr. Moreira has presented a colorable, nonfrivolous challenge. Nevertheless, upon careful consideration, we determine that this challenge fails as well.[5]

---

[5] If Mr. Moreira's appeal was wholly frivolous, we would grant Mr. Moreira's counsel leave to withdraw. *See United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005). However, "[w]here a reviewing court concludes that a meritorious issue remains in a case in which an *Anders* motion has been made, the remedy is for the Court to deny the motion to withdraw or grant the motion and appoint new counsel." *United States v. Hall*, 499 F.3d 152, 156 (2d Cir. 2007) (per curiam). As detailed *infra*, we conclude that Mr. Moreira has presented a nonfrivolous challenge on appeal. Because the issue has been fully briefed by both parties (which included an exceptional pro se brief from Mr. Moreira himself), and we have heard oral argument from counsel, we do not believe the interests of justice and efficient judicial administration would be served by

(continued...)

8

The district court's "interpretation and application of the Sentencing Guidelines" is a question of law that is reviewed de novo. *United States v. Dillon*, 351 F.3d 1315, 1318 (10th Cir. 2003). We review the sentencing court's factual findings for clear error, "giving due deference to the district court's application of the guidelines to the facts." *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006) (internal quotation marks omitted). There is clear error "only if a finding is wholly without factual support in the record, or after reviewing the evidence, we are definitely and firmly convinced that a mistake has been made." *United States v. Ivory*, 532 F.3d 1095, 1103 (10th Cir. 2008) (internal quotation marks omitted).

## I.     Possession of a Firearm Adjustment

Mr. Moreira first alleges that the district court erred by enhancing his base offense level by two levels for possession of a firearm. Under U.S.S.G. § 2D1.1(b)(1), a two level enhancement is imposed when "a dangerous weapon (including a firearm) was possessed" in connection with a drug offense. "The government bears the burden of proving possession by a preponderance of the evidence." *United States v. Roberts*, 980 F.2d 645, 647 (10th Cir. 1992).

---

[5](...continued)
appointing Mr. Moreira new counsel at this time. We decline to grant Mr. Moreira's counsel leave to withdraw. As to any issue deemed to be nonfrivolous, Mr. Moreira should not be deprived of the assistance of counsel for any further proceedings in this case, including a possible petition for rehearing.

Generally, possession under § 2D1.1(b)(1) is "satisfied by showing mere proximity to the offense." *United States v. Alexander*, 292 F.3d 1226, 1231 (10th Cir. 2002) (internal quotation marks omitted).

More specifically, "[t]his burden is satisfied when the government demonstrates that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. Indeed, the government need only show that the weapon was found in the same location where drugs or drug paraphernalia are stored." *United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005) (citation and internal quotation marks omitted). Once the government's burden is satisfied, the burden then shifts to the defendant to prove that "it is clearly improbable that the weapon was connected to the offense." *United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001) (internal quotation marks omitted); *see also* U.S.S.G. § 2D1.1 cmt. n.3.

A defendant also may be assessed the two level enhancement if the weapon was possessed by a coconspirator or codefendant. The adjustment applies to all "relevant conduct," which includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). "Together, [U.S.S.G. §§ 2D1.1 and 1B1.3(a)(1)(B)] permit sentencing courts to attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him." *United States v. McFarlane*, 933 F.2d 898, 899

10

(10th Cir. 1991); *see also United States v. Humphrey*, 208 F.3d 1190, 1210 (10th Cir. 2000) ("[I]n a drug conspiracy conviction the [firearm] adjustment should be applied unless it is clearly improbable that the weapon was connected with the conspiracy offense.").

Further, this court has "previously recognized [that] guns are 'tools of the trade' in the distribution of illegal drugs." *United States v. McKissick*, 204 F.3d 1282, 1293 (10th Cir. 2000); *see also United States v. Nicholson*, 983 F.2d 983, 990 (10th Cir. 1993) ("Drug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers."). As a general principle, "drugs and guns often go together." *United States v. Hishaw*, 235 F.3d 565, 573 (10th Cir. 2000) (internal quotation marks omitted).

However, participation in an illegal drug transaction alone, while probative, is not determinative that a firearm was foreseeable by participating individuals. *See id.* ("[W]e acknowledged the general principle that 'drugs and guns often go together.' However, . . . this general principle, standing alone, would not allow a jury to conclude beyond a reasonable doubt that the defendant . . . was aware there were firearms [present] . . . ." (alterations and internal quotation marks omitted)); *see also United States v. Cochran*, 14 F.3d 1128, 1133 (6th Cir. 1994) ("We are not willing to indulge the fiction that a firearm's presence always will be foreseeable to persons participating in illegal drug transactions.").

Here, Mr. Moreira does not contest that one of his coconspirators possessed

11

the guns—either Hector Moreira or Mr. Perez-Jacome. Both had keys to the Bunker Avenue house where the guns were found. He also does not contest that the guns were possessed in connection with the drug conspiracy. Instead, Mr. Moreira's only argument is that the district court clearly erred in determining that it was reasonably foreseeable *to him* that his coconspirators possessed weapons. We find that the district court did not clearly err.

Mr. Moreira's participation in a large-scale drug conspiracy, coupled with the large amount of drugs found at the Bunker Avenue house and Mr. Moreira's personal connection to the Bunker Avenue house, provided a sufficient basis for the district court to find that it was reasonably foreseeable to Mr. Moreira that his coconspirators possessed firearms. Mr. Moreira was directly involved in the drug conspiracy, selling drugs for Hector Moreira on numerous occasions. Mr. Moreira, in one instance, after making a drug sale returned to the Bunker Avenue house where the drugs and firearms were found.

Further, it is clear that the Bunker Avenue house was the focal point of a large drug-trafficking operation. Indeed, as Mr. Moreira describes it, Bunker Avenue was a "drug stash house." Aplt. Resp. Br. at 19. Large amounts of drugs, drug paraphernalia, and cash were found at the house. And, significantly in light of Mr. Moreira's visit to the house, large quantities of drugs were found in plain view. *See* PSR, *supra*, ¶ 69 at 17-18 (noting that drugs were found in the kitchen area on the counter and on top of the stove).

12

Given Mr. Moreira's involvement in the conspiracy, presence at the Bunker Avenue house, knowledge that the house was a drug stash house, and the large amount of drugs found hidden and in plain view at the house, it was not clearly erroneous for the district court to find that Mr. Moreira could reasonably foresee that his coconspirators would possess firearms at the Bunker Avenue house for the protection of their drugs, drug paraphernalia, and cash receipts.[6] *See Nicholson*, 983 F.2d at 990; *McKissick*, 204 F.3d at 1293; *Hishaw*, 235 F.3d at 573; *cf. United States v. Wade*, 318 F.3d 698, 702 (6th Cir. 2003) ("We are willing to infer that a coconspirator's firearm possession is foreseeable based sole[ly] on the quantity of drugs involved only when the quantity of drugs at issue is so large that the participants would expect others to be carrying protection.").[7]

_____

[6] Indeed, the district court heard testimony on this score. A law enforcement officer who had worked on the investigation of the conspiracy involving Mr. Moreira testified:

> Illegal firearms and narcotics, I find, go hand-in-hand *especially* when you're dealing with individuals that have a large amount of illegal narcotics. They use firearms to – as personal protection, to protect the product or the illegal narcotics, they use it as an intimidation factor in regards to a possible thwarting, a possible rip-off from a – customers or other competition and it's just used in general as an intimidation factor.

R., Vol. III, Tr. at 11 (Sentencing Tr., dated Oct. 4, 2007) (emphasis added); *see also id.* at 13 (officer testifying "in my experience, drugs in large quantities like this case, there are weapons involved").

[7] In *Wade*, the Sixth Circuit overturned the defendant's conviction for

(continued...)

13

a firearms offense, concluding that "there was insufficient evidence to find that Wade should reasonably have foreseen that one of his coconspirators would carry a firearm." 318 F.3d at 701. While it should be kept clearly in mind that the Sixth Circuit reached this foreseeability conclusion—that is, determined that the government's forseeability proof was insufficient—under a higher standard than applies here (i.e., beyond a reasonable doubt), *Wade*'s analysis is instructive as to why we reach a different conclusion concerning foreseeability.

Initially, the *Wade* court stated: "We may infer that a defendant in a drug conspiracy should have foreseen his coconspirator's firearm possession, but the evidence supporting that inference must be more than a mere generalized presumption that drug transactions involve guns." *Id.* at 702. The court then observed that it was "willing to infer that a coconspirator's firearm possession is foreseeable based *sole[ly]* on the quantity of drugs involved only when the quantity of drugs at issue is so large that the participants would expect others to be carrying protection." *Id.* (emphasis added). However, the court concluded as to the defendant that "[a]lthough the $1,100 worth of crack and powder cocaine involved here is not insubstantial, it is a far cry from the huge quantities involved when we have found firearm possession to be foreseeable." *Id.* Second, the court noted that it was "willing to look at the degree of the defendant's involvement in the conspiracy." *Id.* 703. It said "[w]hen evidence shows that the defendant was very involved or experienced in the drug trade, we can infer that the defendant knew of the common link between guns and drugs and thus that a coconspirator's firearm possession was reasonably foreseeable." *Id.* However, the court concluded that no such inference was appropriate in that case. It noted:

> Even if Wade were a major player in this particular transaction, this transaction was relatively small in comparison to other cases in which firearm possession has been ruled foreseeable. The inferences that could be drawn merely from Wade's participation in a drug conspiracy, apparently as a retail dealer for a $1,100 sale, are limited.

*Id.* at 704. The court said that there was some evidence that could "support an inference that this was not Wade's first drug transaction," but it characterized him as "a small-time drug dealer" and noted there was no evidence indicating that "he had a close relationship to any wholesale dealers." *Id.*

(continued...)

14

## II.    Mitigating Role Adjustment

Mr. Moreira next argues that the district court erred in denying his motion

---

[7](...continued)

*Wade* provides a useful contrast to the facts of this case and explains why the district court did not clearly err in finding the firearm enhancement to be appropriate. We begin at a similar starting point as the *Wade* court. We need not rely on "a mere generalized presumption that drug transactions involve guns." *Id.* at 702. Unlike *Wade*, however, the quantity of drugs tied to the conspiracy involving Mr. Moreira was substantial; one might reasonably conclude that it was a quantity worth protecting with firearms. *E.g., Nicholson*, 983 F.2d at 990. However, there is no need for us to rest our foreseeability conclusion on this basis alone, as *Wade* suggests is permissible. Indeed, we expressly eschew reliance on anything akin to a presumption that a defendant's participation in a large scale drug conspiracy per se—at any minimal level or to any minimal degree—renders his or her coconspirator's possession of firearms reasonably foreseeable.

Unlike *Wade*, however, there was ample evidence that Mr. Moreira engaged in more than one drug transaction. Indeed, as discussed further *infra*, the district court expressly concluded that Mr. Moreira's "role in this [conspiracy] was vital and significant and he played a substantial role in distributing methamphetamine to purchasers in the Kansas City area." R., Vol. III, Tr. at 19. Furthermore, there was evidence before the district court that Mr. Moreira was present on several occasions at drug transactions with individuals identified as Hector Moreira's "lieutenants." PSR, *supra*, ¶¶ 73, 76, at 19. And around the time of Mr. Moreira's arrest, he apparently was only one of three active members of the conspiracy—one of the others was Hector Moreira, the conspiracy's leader. The court would not have been unreasonable in inferring, as did the government, that when the so-called lieutenants and others were arrested, Hector Moreira had to "resort to other individuals" including Mr. Moreira "to take th[eir] lead." R., Vol. III, Tr. at 16-17. Not only do these facts have a bearing on Mr. Moreira's role in the offense, as discussed in section II, but they also provide evidence suggesting that Mr. Moreira had a somewhat "close" business relationship with Hector Moreira, the drug supplier, such that the "nexus between guns and drugs" in this case was likely to be reasonably foreseeable. *Wade*, 318 F.3d at 703, 704. *Wade*, therefore, highlights the factors that explain why the circumstances of this case, unlike those in *Wade*, militate with some force toward a finding of reasonable foreseeability and, perhaps more importantly, why the district court did not clearly err in coming to that conclusion.

for a minor participant adjustment.[8]  Under U.S.S.G. § 3B1.2(b), a minor participant in a criminal activity is entitled to a two level reduction in his offense level.  This Guidelines provision is only applicable where there is more than one participant involved in the offense.  U.S.S.G. § 3B1.2 cmt. n.2; *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004).  A minor participant is one who "play[ed] a part in committing the offense that makes him substantially less culpable than the average participant," but whose role was not minimal.  U.S.S.G. § 3B1.2 cmt. nn. 3(A), 5.  A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group."  *Id.* § 3B1.2 cmt. n.4.

Our inquiry is focused upon "the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise," *Salazar-Samaniega*, 361 F.3d at 1277 (internal quotation marks omitted), and "the defendant's culpability relative to the other participants in [the] offense," *United States v. Williamson*, 53 F.3d 1500, 1524 (10th Cir. 1995).  *See also United States v. Harfst*, 168 F.3d 398,

---

[8]     At sentencing, Mr. Moreira requested a four level reduction for being a "minimal participant" pursuant to § 3B1.2(a) and argued, in the alternative, for a two level reduction for being a "minor participant" pursuant to § 3B1.2(b).  Mr. Moreira's counsel makes the same argument in his *Anders* brief.  However, Mr. Moreira's response to the *Anders* brief only requests a two level reduction for being a minor participant.  We need not determine here whether Mr. Moreira has abandoned the minimal participant claim.  Because we conclude that Mr. Moreira does not qualify as a minor participant—a role that requires more involvement than a minimal participation—the minimal participant argument also would fail.

16

403 (10th Cir. 1999) (acknowledging that "evidence of the relative roles of any other participants in the criminal activity . . . is required for consideration of a § 3B1.2 adjustment" and that "a sentencing court may consider the underlying scheme, as opposed to merely the offense of conviction, in determining role in the offense adjustments" (internal quotation marks omitted)).  The "defendant bears the burden of proving by a preponderance of the evidence whether [the adjustment] is warranted."  *United States v. Martinez*, 512 F.3d 1268, 1275 (10th Cir.), *cert. denied*, 128 S. Ct. 2461 (2008).  The "denial of a minor participant status represents a finding of fact," which we review for clear error.  *Id.*

Here, the district court did not clearly err in finding that Mr. Moreira did not prove by a preponderance of the evidence that the minor role adjustment was warranted.  Mr. Moreira does not contest his knowledge of the scope or structure of the criminal enterprise.  He only alleges that he was less culpable than his codefendants.  Mr. Moreira was a drug courier.  Couriers, though, are not per se minor participants.  *United States v. Ballard*, 16 F.3d 1110, 1115 (10th Cir. 1994).

The record shows that Mr. Moreira has on numerous occasions either been present at or directly executed drug transactions; he was not a one-time participant.  PSR, *supra*, ¶ 76 at 19 ("[Mr. Keith Middleton] said Bayron Moreira, Kenet Del Cid-Rendon, and Edguar Lizardo-Figuiroa were present at drug transactions on several occasions."); *id.* ¶ 77 at 19 ("[Kelsey McCarthy] said she

17

purchased cocaine from Bayron Moreira a few times."); *id.* ¶ 82 at 20 ("[Confidential source 3] stated that he had purchased from Bayron Moreira on three to four occasions (excluding April 18, 2006, purchase) . . . ."). Indeed, there was evidence before the district court that Mr. Moreira was present at drug transactions on several occasions with individuals identified as Hector Moreira's "lieutenants," *id.*, ¶¶ 73, 76, suggesting that he was more than a low-level drug courier.

Moreover, following the arrest of those so-called lieutenants—and almost all of the other members of the conspiracy—it would not have been unreasonable for the district court to infer, as the government argued, that Hector Moreira had to "resort to other individuals" including Mr. Moreira "to take th[eir] lead." R., Vol. III, Tr. at 16-17. The district court specifically concluded that Mr. Moreira's "role in this [conspiracy] was vital and significant and he played a substantial role in distributing methamphetamine to purchasers in the Kansas City area."[9] R.,

---

[9] Principally based upon this statement, Mr. Moreira contends that the district court applied the wrong standard as to who is a minor participant. He claims that the court improperly relied on the seriousness of his crime, rather than considering his relative culpability compared to other members of the conspiracy. However, this argument is without merit. It is clear that the court was properly focused on Mr. Moreira's relative culpability. The court pressed Mr. Moreira's counsel to explain why he was not "just as involved as all the other people that were selling drugs for Hector Moreira." R., Vol. III, Tr. at 16. And, prior to overruling Mr. Moreira's objection, the district court remarked that it was Mr. Moreira's burden "to show that he's substantially less culpable than the average participant." *Id.* at 19. Therefore, we are left with no doubt that the court

(continued...)

Vol. III, Tr. at 19.

In sum, the record shows that, at the very least, Mr. Moreira's pattern of conduct was consistent with the level of participation of the average coconspirator dealing drugs for Hector Moreira. Accordingly, the district court did not clearly err in not applying the minor role adjustment.

## III. Ineffective Assistance of Counsel

Mr. Moreira lastly contends that his attorney was ineffective in failing to inform him that by waiting until the day of trial to plead guilty, he would be ineligible for the third level reduction to his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(b) and the "safety valve" provision of U.S.S.G. § 5C1.2. Mr. Moreira also contends that his attorney was ineffective in failing to properly advocate for a minor role reduction at the sentencing hearing and in his *Anders* brief. However, "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). To adequately review an appellant's ineffective assistance of counsel claim, "[a] factual record must be developed in and addressed by the district court

_____

[9](...continued)
understood the nature of the role-in-the-offense inquiry; it simply found that Mr. Moreira did not carry his burden of proof.

19

. . . . Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim." *Id.* (footnote omitted).

We acknowledged in *Galloway* that "*in rare instances* an ineffectiveness of counsel claim may need no further development prior to review on direct appeal." *Id.* (emphasis added). This is not one of those rare cases, however. The record here is insufficient to adequately address Mr. Moreira's claim. Further factual inquiry is necessary. Accordingly, we dismiss this claim without prejudice to Mr. Moreira's pursuing, if otherwise authorized and appropriate, this issue in a collateral proceeding.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's sentencing order. Because we have determined that Mr. Moreira's appeal was not wholly frivolous, however, we **DENY** Mr. Moreira's counsel leave to withdraw pursuant to *Anders*. We express no view concerning the appropriateness of the continued representation based upon considerations other than frivolousness.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge


20

*United States v. Moriera*, 07-3303
**McKAY**, Circuit Judge, *concurring in part and dissenting in part.*

I agree with the majority's resolution of Defendant's minor-participant and ineffective-assistance claims. However, as for the U.S.S.G. § 2D1.1(b)(1) firearm enhancement, it is my view that the courts have improperly abandoned the search for evidence to support the foreseeability element in favor of a judge-made presumption that the possession of firearms by co-conspirators should be reasonably foreseeable to anyone with a non-minimal role in a large-scale drug conspiracy. I therefore dissent from the majority's rejection of Defendant's challenge to this enhancement.

The majority concludes that Defendant could have reasonably foreseen that his co-conspirators would possess guns at their drug stash house based on his "involvement in the conspiracy, presence at the Bunker Avenue house, knowledge that the house was a drug stash house, and the large amount of drugs found hidden and in plain view at the house." (Majority Op. at 12.) However, none of these facts demonstrate that Defendant knew or should have known of the firearms hidden in a false ceiling in a house he visited once. While Defendant had more than minimal involvement in the conspiracy, he was not in the upper echelon of leadership. Unlike his co-conspirator Hector Moreira, whose sentence was affirmed by a panel of this court in *United States v. Moreira*, No. 07-3307, 2008 WL 4787157, at *3 (10th Cir. Nov. 4, 2008), he did not have a supervisory role over the co-conspirator or co-conspirators who possessed the firearms. And,

while the record supports an inference that Defendant knew the Bunker Avenue house was a drug stash house and may even have seen drugs at the house on his one documented visit there, I am unwilling to presume that Defendant should have foreseen from the mere presence of drugs that guns would also be found somewhere in the house. Our cases have held that a jury may reasonably infer that a firearm found in a drug dealer's possession was possessed by this dealer in furtherance of a drug trafficking offense because "[d]rug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers." *United States v. Nicholson*, 983 F.2d 983, 990 (10th Cir. 1993). However, I would not reason from this generality that weapons will almost inevitably be found where drugs are located, rendering their presence reasonably foreseeable to any conspirators who know that their co-conspirators have stashed drugs somewhere.

Although the majority states that it "expressly eschew[s] reliance on anything akin to a presumption that a defendant's participation in a large scale drug conspiracy per se—at any minimal level or to any minimal degree—renders his or her co-conspirator's possession of firearms reasonably foreseeable," (Majority Op. at 14-15 n.7), the majority then implicitly relies on a presumption that a defendant with a non-minimal role in a large-scale drug conspiracy should reasonably foresee that his co-conspirators will possess firearms. The majority points to no evidence supporting a finding of foreseeability absent the application

2

of such a presumption. The government presented no evidence that Defendant was ever present when any co-conspirators mentioned, used, displayed, or carried any firearms. Indeed, the government presented no evidence that any co-conspirators ever mentioned, used, displayed, or carried firearms at all. Nor did the government present evidence that any co-conspirators ever engaged in violence of any sort. Particularly where there is no evidence that any of Defendant's co-conspirators ever engaged in violence, displayed or mentioned weapons, or otherwise gave Defendant reason to suspect that they possessed firearms, I would not conclude that Defendant should have foreseen a co-conspirator's firearm possession based simply on the fact that his co-conspirators stashed and distributed large quantities of narcotics. I am not persuaded that Defendant's mid-level role in the conspiracy makes such a presumption of foreseeability permissible. I am unable to see how Defendant's participation in multiple non-violent drug transactions should somehow have imparted to him an awareness that a co-conspirator had firearms.

I am convinced that the government did not meet its burden of showing by a preponderance of the evidence that the constructive possession of firearms by one of Defendant's co-conspirators was reasonably foreseeable to Defendant, and I would accordingly conclude that the district court's finding was clearly erroneous. I therefore dissent from this portion of the majority's decision.

3