NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0047n.06

No. 07-3739

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 26, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| ROBERT ANTHONY STONEROCK, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  MERRITT, COOK and WHITE, Circuit Judges.

**WHITE, Circuit Judge**.  Defendant Robert Stonerock pled guilty of conspiring to possess with the intent to distribute and to distribute over 1000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vii) and 846.  In exchange for Stonerock's guilty plea, the Government agreed to drop a firearm count that was part of the same indictment.  The district court sentenced Stonerock to 121 months' imprisonment, followed by five years of supervised release. Stonerock appeals, raising constitutional challenges and arguing that the plea agreement should be specifically enforced.  We  affirm in part, and remand in part for a determination whether the two-point enhancement under U.S.S.G. § 2D1 is contrary to the plea agreement.

**I.**

From approximately January 1997 through November 2, 2001, Stonerock conspired with various individuals to distribute marijuana in the Dayton, Ohio area.  Stonerock and his co-

conspirators obtained marijuana from suppliers in Arizona and distributed it in the Dayton area, in exchange for money. Over 1,000 kilograms of marijuana were attributable to Stonerock personally.

On November 2, 2001, the Government executed search warrants at Stonerock's residence and seized approximately $160,000 in cash from the washing machine and bedroom, and two semiautomatic handguns, found under the sofa in the family room and in the master-bedroom closet. Stonerock was arrested later that day.

Approximately one month after Stonerock's arrest, Stonerock's counsel (at the time, Jon Paul Rion and John H. Rion) informed the Government that Stonerock had information regarding his case to pass along. Stonerock met with Drug Enforcement Special Agent Joseph Hathaway a number of times and provided information.

A grand jury returned a two-count indictment against Stonerock and his co-defendant Stephen Mobley, Jr., on January 22, 2002. The indictment originated in Arizona, and charged Stonerock with one count of knowingly and intentionally conspiring to possess with the intent to distribute and to distribute over 1000 kilograms of marijuana, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vii) and 846 (attempt and conspiracy), and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) and (2). Because Stonerock had a prior marijuana trafficking conviction, he was prohibited from owning a firearm.

In October 2002, Stonerock changed counsel–from Rion and Rion to Matthew Arntz and George Katchmer. In January 2003, pursuant to a written plea agreement, Stonerock entered a plea of guilty to count one of the indictment, in exchange for which the Government dismissed the firearm count.

In February 2003, after Stonerock pled guilty, he was indicted in a drug and racketeering case in Arizona. The original case (the instant case) involved a marijuana distribution organization focused primarily in the Tucson area, while the later case focused on the Phoenix area.

The Presentence Report (PSR) in the instant case calculated the Guidelines range at 135 to 168 months' imprisonment, and recommended a 140-month sentence. The PSR scored Stonerock's offense level at 34, which included a 2-point enhancement for a firearm under U.S.S.G. § 2D1.1(b)(1). In May 2003, Stonerock objected to the PSR, filed a motion for departure and requested a hearing, arguing that the firearm enhancement was improper and that the PSR's criminal history calculation was overstated his criminal history. Several months later, Stonerock filed a sentencing memorandum reasserting these claims, and adding that he had provided the Government substantial assistance (such that he should receive a reduction under U.S.S.G. § 5K1.1).

During a telephone conference set by the court, the Government agreed that Stonerock provided information, but asserted that it was not substantial. The Government stated it would not file a § 5K1.1 departure because Stonerock had "minimized some of the information that he's provided," had not spoken about several issues that were brought up in the plea agreement, and because of the pending Arizona matter. After the telephone conference, at the court's request, Agent Hathaway met with Stonerock to provide Stonerock another opportunity to qualify for a § 5K1.1 reduction. Agent Hathaway later testified that Stonerock failed to cooperate completely by refusing to answer questions regarding his finances and regarding local (Dayton, Ohio) co-conspirators.

In February 2004, Stonerock filed a second motion for downward departure, again raising the substantial assistance issue and requesting a sentencing hearing. Over the Government's

objection on the ground that Stonerock failed to allege an unconstitutional motive, a hearing was held at which Agent Hathaway testified regarding Stonerock's assistance and the firearm enhancement.

In July 2004, Stonerock's previous attorneys, Rion and Rion, substituted as Stonerock's counsel, replacing Matthew Arntz and George Katchmer. On January 26, 2005, two years after entering a guilty plea, Stonerock moved to vacate his plea.

In April 2006, Stonerock filed an updated sentencing memorandum, requesting an evidentiary hearing to elicit testimony regarding his cooperation, and to compel the government to file a § 5K1.1 motion. The Government opposed a hearing on the basis that Stonerock had failed to allege an unconstitutional motive. The district court held an evidentiary hearing in June 2006, following which the court asked the Government to present testimony regarding the status of the Arizona case. DEA Special Agent John Murphy, the Arizona case agent, testified in November 2006.

Later in November 2006, another evidentiary hearing was held at which Stonerock and his previous counsel, George Katchmer, testified. Katchmer testified that during the time he represented Stonerock, he (Katchmer) did not promise Stonerock he would qualify for the mandatory-minimum safety valve under U.S.S.G. § 5C1.2. Stonerock conceded that his attorneys made him no promises regarding the safety valve, but testified that his understanding was that he was eligible for it. At a later hearing, Katchmer's co-counsel, Arntz, testified he made no promises to Stonerock regarding the safety valve.

At the May 15, 2007 sentencing hearing, the district court stated it would overrule Stonerock's motion to vacate his plea and issue its decision to that effect later that day. The court

sustained Stonerock's challenge that his criminal history was overstated and reduced his criminal history category from III to II. The court ruled that Stonerock was ineligible for a safety valve reduction under U.S.S.G. § 5C1.2 because of his criminal history category (greater than I), and firearm enhancement. The court further concluded that the government's decision not to seek a § 5K1.1 departure (for substantial assistance) was more than amply supported, and that the Government's decision was not based on an unconstitutional motive or bad faith.

Based on Stonerock's offense level of 31 (34 minus 2 for acceptance of responsibility, and minus 1 for timely notification of intent to plead guilty) and criminal history category II, Stonerock's Guidelines Range was 121 to 151 months. After considering the sentencing factors under § 3553, the district court sentenced Stonerock to 121 months' imprisonment, followed by 5 years of supervised release. This appeal ensued.

## II. Defendant's Constitutional Challenges
### A - Due Process and Separation of Powers

This court reviews de novo a constitutional challenge to a sentence. *United States v. Crowell*, 493 F.3d 744, 749 (6th Cir. 2007). The prosecution argues that we should review for plain error, asserting that Stonerock did not preserve his constitutional challenges. We do not agree, as Stonerock raised his constitutional challenges in a motion to stay sentencing, motion to vacate plea, and a sentencing memorandum.

Stonerock argues that his sentencing violated constitutional principles of separation of powers and due process. He maintains that the Constitution limits Congress's authority to mandate minimum sentences to three classes of cases: counterfeiting, piracies and felonies committed on the high seas,

and treason. He asserts that the framers contemplated that a judge would freely fashion an offender's sentence except in these three categories of cases, and that the Sentencing Guidelines on crimes other than thes are beyond Congress's constitutional authority. Stonerock asserts that the Guidelines as a whole, or specifically as they relate to the crime for which he was sentenced, are unconstitutional.

Stonerock also maintains that Executive branch control of the ability of the judiciary to exercise its power is an unconstitutional delegation of judicial power to the Executive branch. Stonerock points to the requirement of a § 5K1.1 motion from the prosecutor as a precondition for the sentencing judge to deviate below the otherwise minimum sentencing, asserting that it gives judicial authority to a member of the Executive branch. Stonerock asserts that the Sentencing Reform Act grants unfettered discretion to the Executive to act as the only effective advocate for the rights of the accused at sentencing by granting the prosecutor unlimited authority to permit the judicial officer to deviate downward from the sentencing guidelines. We perceive no constitutional violation.

1

"Congress. . . has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control." *Mistretta v. United States*, 488 U.S. 361, 364 (1989) (internal citation omitted). Following *Mistretta*, this court rejected separation-of-powers challenges to mandatory minimum sentencing in *United States v. Odeneal*, 517 F.3d 406, 414 (6th Cir. 2008) (rejecting defendant's argument that statutory mandatory sentence violates the separation of powers doctrine because mandatory minimums unconstitutionally shift

sentencing discretion from courts to prosecutors).[1]  Further, the courts that have addressed whether

the separation of powers doctrine is violated by U.S.S.G. § 5K1.1's and 18 U.S.C. § 3553(e)'s

requirement of a government motion as a prerequisite to a reduced sentence based on a defendant's

cooperation, have held in the negative.  *See United States v. Spees*, 911 F.2d 126, 127-28 (8th Cir.

1990); *United States v. Huerta*, 878 F.2d 89, 91-93 (2d Cir. 1989), *cert. den.* 493 U.S. 1046 (1990);

*United States v. Ayarza*, 874 F.2d 647, 652-53 (9th Cir. 1989), *cert. den.* 493 U.S. 1047 (1990); *see*

*also United States v. Severich*, 676 F.Supp. 1209, 1210-11 (S.D. Fla. 1988), *aff'd*, 872 F.2d 434 (11th

Cir. 1989).

In *United States v. Allen,* 873 F.2d 963, 965-66 (6th Cir. 1989), this court held that the due

process clause is not violated by a court's sentencing pursuant to the Guidelines.  This court and other

---

[1]At argument, defense counsel asserted that *Odeneal, supra*, was distinguishable in that it involved an Eighth Amendment question, and that *Mistretta* did not address *limitation* of powers. We are not persuaded by this distinction.

*Odeneal* did involve an Eighth Amendment challenge.  The defendant Andres argued that application of a mandatory life sentence violated the Eighth Amendment because it was grossly disproportionate to the offenses at issue, i.e., conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base and possession of firearms in furtherance of a drug-trafficking crime.  517 F.3d at 413-14.  However, Andres also argued "that a statutory mandatory sentence violates the separation of powers doctrine because mandatory minimums unconstitutionally shift sentencing discretion away from the courts to prosecutors."  *Id.* at 414.  This court noted that it had "flatly" rejected that argument:

> We have flatly rejected this argument because "'the scope of juridical discretion with respect to a sentence is subject to congressional control.'"  *United States v. Dumas*, 934 F.2d 1387, 1389 (6th Cir. 1990) (quoting *Mistretta v. United States*, 488 U.S. 361, 364, 109 S.Ct. 647, 102 L. Ed. 2d 714 (1989)).  *See also id.* ("Congress can constitutionally eliminate all discretion in sentencing judges by establishing mandatory sentences . . . .")

517 F.3d at 414.

circuit courts have also rejected claims that Congress's enactment of minimum sentences violates a defendant's due process right to an individualized sentence. *See United States v. Dumas*, 934 F.2d 1387, 1389 (6th Cir. 1990), *see also United States v. Brownlie*, 915 F.2d 527, 528 (9th Cir. 1990).

## B -Ineffective Assistance of Counsel

## § 5C1.2 safety valve and conflict of interest

Stonerock asserts he was denied effective assistance of counsel because one of his attorneys, Arntz, had a clear conflict of interest created by his representation of Stephen Sammons, another alleged co-conspirator, in two separate criminal prosecutions, this case and another in Arizona. Without citing to the record, Stonerock states that Sammons inculpated Stonerock in Arizona. He further asserts that Arntz reassured him that he would receive the benefit of the sentencing safety valve under U.S.S.G. § 5C1.2, and that he relied on Arntz's representation in his decision to accept the plea agreement. Stonerock maintains that Arntz's "conflicted and incorrect advice" led him to plead guilty and, had he known application of the safety valve was not possible, he would have insisted on pursuing the motion to suppress the firearms, and/or a trial on the merits. Stonerock maintains that Arntz's advice regarding the safety valve being available was due either to Arntz's representation of Sammons or due to Arntz's ineffective performance.

Stonerock did not raise an ineffective assistance of counsel claim below. Generally, this court will not review a claim of ineffective assistance of counsel raised for the first time on direct appeal unless the record is adequately developed. *United States v. Campbell*, 549 F.3d 364, 376-77 (6th Cir. 2008). The record as developed does not establish Stonerock's claim. Thus, his ineffective assistance

claim is best addressed in a post-conviction proceeding under 28 U.S.C. § 2255. *Massaro v. United States*, 538 U.S. 500, 502-09 (2003); *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005).

**Conflict of Interest**

On appeal, Stonerock asserts that the district court recognized that Stonerock's counsel, Arntz, had an actual conflict by simultaneously representing Stonerock and Sammons in two separate criminal prosecutions. Stonerock notes that the district court did not realize this until after Stonerock had pled guilty on Arntz's advice.

A review of the record establishes that it was co-defendant Mobley's counsel that raised the possibility of a conflict of interest at one of the sentencing hearings, on April 1, 2004, during a discussion prompted by the district court's inquiry into the status of the Arizona case. There was discussion between the court, counsel for Mobley, and counsel for Stonerock, Arntz and Katchmer, regarding delaying sentencing in this case until the Arizona matter was resolved. Apparently the Arizona defendants were Stonerock, Sammons, and several others. Arntz and Katchmer told the district court that attorney Jon Rion was representing Stonerock in Arizona, and that Arntz was representing Sammons in Arizona.

The conflict issue never arose again. The record is thus inadequately developed to address this issue as well. *See Campbell*, 549 F.3d at 376-77.

**III**.

**A**

Stonerock next argues that the plea agreement should be specifically enforced as to the § 5K1.1 downward departure for substantial assistance. U.S.S.G. § 5K1.1 provides:

Substantial Assistance to Authorities (Policy Statement)

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a)     The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
(3) the nature and extent of the defendant's assistance;
(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
(5) the timeliness of the defendant's assistance.

The Commentary to § 5K1.1 states in pertinent part:

1.  Under circumstances set forth in 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n), as amended, substantial assistance in the investigation or prosecution of another person who has committed an offense may justify a sentence below a statutorily required minimum sentence.                    * * *
3. Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain.

Because the plea agreement in the instant case makes clear that the Goverment retains complete discretion to determine whether to file a motion for downward departure in return for substantial assistance,[2] the Government's refusal to recommend a downward departure can only be

---

[2]The plea agreement provided in pertinent part:

4.  If, in the opinion of the United States Attorney for the Southern District of Ohio, the defendant renders substantial assistance within the meaning of U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), the United States will file a motion pursuant to these

reviewed for unconstitutional motives. *United States v. Gates*, 461 F.3d 703, 711 (6th Cir. 2006) (quoting *Wade v. United States*, 504 U.S. 181, 185-86 (1992) (holding that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive.")); *United States v. Hawkins*, 274 F.3d 420, 428 (6th Cir. 2001) (noting that "[w]hile some circuits have ruled that courts may conduct a bad faith review of the government's refusal to file a substantial assistance motion, this Circuit has expressly ruled that when a plea agreement allocates complete discretion to the government to consider whether a substantial assistance motion should be filed, we may only review the government's decision for unconstitutional motives." Internal citations omitted.) However, the plea agreement still imposed certain restraints on the Government–to analyze and determine whether substantial assistance had been rendered and, if the Government decided not to file the motion, it had to establish Stonerock's breach of the plea agreement. *See United States v. Lukse*, 286 F.3d 906, 912 & n.3 (6th Cir. 2002). The Government must exercise its discretion and determine if the defendant provided substantial assistance. *United States v. Villareal*, 491 F.3d 605, 609-11 (6th Cir. 2007), citing *Lukse* at 912.

The record in the instant case supports that the Government exercised its discretion to determine whether Stonerock had provided substantial assistance, and met its burden of showing that

provisions. The defendant acknowledges that, under the law and the terms of this plea agreement, the United States retains sole and complete discretion in determining whether a departure motion based on substantial assistance will be filed. If such a motion is filed, the defendant understands that it is not binding on the Court, that is, the Court is not obligated to grant the motion and reduce the defendant's sentence. . . . . The defendant understands that he will not be allowed to withdraw his guilty plea if the United States does not file or the Court does not grant a substantial assistance motion. . . . .

he had failed to do so. *Lukse*, 286 F.3d at 912 & n.3. DEA Special Agent Hathaway testified that Stonerock did not provide certain requested financial information and did not answer questions regarding local co-conspirators.

Stonerock's related argument that the downward departure should be enforced because the district court told him that the Government was duty bound to file the § 5K1.1 motion, is unavailing. The district court merely reiterated to Stonerock what the plea agreement stated–that if the Government, in its discretion, concluded that Stonerock had rendered substantial assistance, it would move for a § 5K1.1 downward departure.

Stonerock's argument that the plea agreement should be specifically enforced fails.

**B**

Stonerock also asserts that the letter and spirit of the plea agreement required that the alleged use or possession of a firearm would not be considered in sentencing. He notes that the Government agreed to dismiss the firearm count of the indictment, and that all mention of the firearms was removed from the statement of facts. Stonerock contends that by agreeing to the plea agreement, he lost his right to challenge and suppress the firearms, and maintains that the Government "breached its duty of good faith or is equitably estopped from adducing information about the alleged firearm possession when 1) the Government lead [sic] Mr. Stonerock to reasonably rely on the dismissal and removal from the statement of facts as an indication that the firearms were no longer at issue and 2) the Plea Bargain simultaneously prevented Mr. Stonerock from pursuing his meritorious motion to suppress the firearms."

At argument, the question arose whether the district court was cognizant that the plea agreement stated, "The defendant understands that the government will recommend to the Court that

the base offense level for purposes of the federal sentencing guidelines for Count I is level 32, based upon the amount of controlled substances reasonably foreseeable to the defendant *and all relevant conduct*." (Emphasis added). Defense counsel argued that contrary to this plea language, the Government put in proofs regarding firearms.

Stonerock also contends that the district court violated *United States v. Booker*, 543 U.S. 220 (2005), by applying the firearm enhancement.

Although the PSR recommended the firearm enhancement be applied, the district court agreed (on Stonerock's request) to hear testimony related to the firearm enhancement. DEA Agent Hathaway testified that he was present when the search warrant was executed at Stonerock's residence and two firearms were found. Hathaway also testified that at least one of the firearms was loaded and under the sofa in the family room. The other was in the master bedroom closet.

The court's decision overruling the motion to vacate plea rejected Stonerock's arguments that 1) when he entered the plea he did not agree that he possessed a firearm in connection with the drug conspiracy and that, therefore, enhancing his offense level under the advisory guidelines and denying him the protection of the safety valve, 18 U.S.C. § 3553(f), would violate *Booker*; and 2) that *Booker* created a new sentencing system, which justified the withdrawal of his guilty plea. The court also rejected Stonerock's argument that his decision to enter a guilty plea was based on the assumption that he would qualify for the safety valve and that, therefore, he would not be required to serve the mandatory minimum sentence of ten years.

> In Booker, the Supreme Court reaffirmed that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at 244. Herein, Stonerock admitted during the change of plea hearing that the amount

of marijuana that was attributable to him exceeded 1,000 kilograms. See Doc. #91 at 5. Therefore, by that admission and the entry of the guilty plea, in accordance with 21 U.S.C. § 841(b)(1)(1)(A), he exposed himself to a statutory maximum sentence of life imprisonment. If the safety valve were applicable, this Court could impose a sentence below the mandatory minimum sentence of ten years; however, its inapplicability will not permit this Court to sentence Stonerock to more than life imprisonment. Accordingly, the Court rejects the argument that denial of the safety valve will violate Booker, since he did not admit to possession of a firearm.

The Court also rejects his second argument, given that federal courts have routinely held that the Supreme Court's decision in Booker, after a guilty plea, does not provide a defendant the basis for withdrawing that plea. See e.g., United States v. Roque, 421 F.3d 118 (2d Cir. 2005); United States v. Green, 405 F.3d 1180 (10th Cir. 2005); United States v. Sahlin, 399 F.3d 27, 30 (1st Cir. 2005). In accordance with those decisions, this Court concludes that the fact that the Supreme Court decided Booker after Stonerock had entered his guilty plea does not warrant the withdrawal of such.

In addition, the Court rejects the premise that Stonerock should be permitted to withdraw his guilty plea, because he entered it under the assumption that he would qualify for the safety valve. Doc #91 at 7. In response, the Government's counsel stated that it had information which would render him ineligible for the safety valve (i.e., a firearm was involved and his level of participation in the charged conspiracy). Id. at 7-8. This Court explained to Stonerock that he faced a mandatory minimum sentence of ten years, unless he qualified for the safety valve or provided substantial assistance. Id. at 9. During the evidentiary hearing, the two attorneys who had represented him during the change of plea hearing testified that they had not promised him that he would qualify for the safety valve, although they believed that good arguments in support of that proposition existed. Stonerock's testimony on that point was internally inconsistent. Although he indicated that his counsel had not made such a promise, he did testify that they had told him that he would qualify for the safety valve. Given Stonerock's inability to explain that inconsistency or to offer a credible reason for not questioning the statement of Government's counsel during the change of plea hearing that he would not so qualify, this Court is unable to credit Stonerock's testimony in that regard. Therefore, the Court finds, as a matter of fact, that, although Stonerock knew there were credible reasons to believe that he would qualify for the safety valve, the Government opposed same and the issue had not been resolved when he entered his guilty plea. Therefore, he knew that he subjected himself to a mandatory minimum sentence of ten years by entering the guilty plea and did not enter that plea under the assumption that he would so qualify for the safety valve. [J.A. vol. III, 297-99/Decision & Entry Overruling Def.'s Motion to Vacate Plea ,6/18/07.]

We agree with the district court that there was no *Booker* violation.

We cannot, however, conclude that the district court properly applied U.S.S.G. § 2D1 because it is unclear whether the plea agreement permitted such an enhancement.

U.S.S.G. § 2D1 provides in pertinent part:

> Unlawful Manufacturing. . . Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy
>
> (b)  Specific Offense Characteristics
>         (1) If a dangerous weapon (including a firearm) was possessed, increase by **2** levels.

The Commentary, Application Note 3 states in pertinent part:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet. . . .

As the Government points out, under the Commentary to U.S.S.G. § 2D1.1, the two-level firearm enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  On its face, U.S.S.G. § 2D1 seems to apply.  However, as part of the plea agreement the Government agreed to recommend a base offense level of 32, that would include all relevant conduct.  Stonerock asserts that the relevant conduct included any weapons possession, so that a two-point enhancement was not appropriate.  Because the district court did not address the agreement in this context, we remand for a determination whether the two-point enhancement was consistent with the agreement.

**IV.**

Stonerock's final argument is that the sentence imposed is outside the statutory limits, i.e., that his sentencing range was erroneously determined because the Government failed to request a three-point adjustment for his acceptance of responsibility or because of an inadvertent error by the court. He asserts that "[t]he additional sentencing points that were added and/or not subtracted, as required by the Plea Agreement and for Mr. Stonerock's cooperation, resulted in a sentence outside the statutory limits for the crimes to which Mr. Stonerock agreed to plead."

Because Stonerock did not raise this issue at sentencing, this court's review is for plain error. *United States v. Leachman*, 309 F.3d 377, 380 (6th Cir. 2002), citing Fed. R. Crim. P. 52(b). "There is plain error only if there is an error that is plain, and it also affects the substantial rights of the defendant. Even so, we will act on the error only if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

U.S.S.G. § 3E1.1 provides in pertinent part:

<u>Acceptance of Responsibility</u>

(a)    If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.

(b)    If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct **by timely notifying authorities of his intention to enter a plea of guilty**. . . decrease the offense level by **1** additional level. [Some emphasis added.]

Stonerock is correct that the plea agreement stated that "the Government will recommend that the Defendant be given a 3 point adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1," and the Government concedes that "[u]ndoubtedly, the plea agreement could have clarified

that the total three-level reduction contemplated by the parties encompassed both a two-level reduction for acceptance of responsibility and an additional one level for timely notification of intent to plead guilty." Nonetheless, Stonerock received a three-point adjustment under § 3E1.1, i.e., two points for acceptance of responsibility and one point for timely notification of intent to plead guilty. U.S.S.G. § 3E.1.1 permits only a total reduction of three points. The court awarded Stonerock the full three-point reduction, and this 3-point adjustment reduced Stonerock's offense level to 31. We conclude that Stonerock has not established plain error.

Affirmed in part, remanded in part for a determination whether the two-point enhancement under U.S.S.G. § 2D1 is contrary to the plea agreement.

No. 07-3739
*United States v. Stonerock*

**MERRITT, Circuit Judge, concurring.** I concur in Judge White's opinion, but I would hope on remand that the government will reassess its decision — not subject to judicial review — to invoke the 10-year mandatory minimum in this non-violent marijuana case. The punishment seems unduly harsh. If given the benefit of Offense Level 32 minus 3 Levels, as promised in the plea agreement, the sentence would be more reasonable. Apparently, this cannot be done without a § 5K1.1 motion. The Department of Justice should give some consideration to the possibility of rehabilitation in this case, as well as to the enormous expense to the taxpayer imposed by mandatory minimum sentences in non-violent marijuana cases, a drug that some states have now legalized. The present law effectively makes the prosecutor the sentencer in these cases, and so the prosecutor should not view the case simply as an adversary but take the broader view using the great power of the Department of Justice to see that justice is done. It should take the opportunity to use the tools at hand — here, a 5K1.1 motion — to see that unreviewable, excessive, un-individualized mandatory minimum sentences are not imposed.